# ℭheeling.

## B. L. MILES *vs.* THE STATE.

### July Term, 1872.

1. After the fact of a sale of spirituous liquors by a druggist is proven, it devolves on him to show the *bona fides* of the transaction—he not having license to sell spirituous liquors. Chapter 32, section 4, Code of 1868.

2. On the trial of an indictment against a druggist for selling spirituous liquors without license, it is proved that " witness went to defendant's drug store, and stated to defendant, who was a regular druggist, that he, witness, was sick and wanted some whiskey. The defendant asked witness what was the matter; witness replied that he had the belly-ache; whereupon the defendant mixed some whiskey and ginger together in a glass and gave it to the witness, who drank it and paid defendant for it; witness said the drink was very hot with ginger; at which time above mentioned the whiskey shops were all closed and not selling whiskey. That he had got whiskey there several times before, but it was always mixed with medicine, and he always got it for medicinal purposes. And on the part of the defendant it was proved by one other witness that defendant was a regular druggist and made it a part of his business to fill prescriptions for physicians, and in the course of his business frequently prescribed for acute diseases, and his judgment therein was relied upon." HELD,

   That a verdict for the state is not unsupported by evidence, and it was not error to refuse to set it aside on such ground.

Indictment found for selling spirituous liquors without a license. Verdict and judgment for State, at March Term, 1872.

An ample statement of the matters in controversy, is contained in the opinion of President Berkshire.

The defendent brought the case here.

*D. W. Polsley* for the plaintiff in error.

The court erred in refusing to set aside the verdict of the jury and grant the defendant a new trial, because the evidence clearly shows, as will be seen by reference to the bill of ex-

ceptions, that the only sale proven by the State to have been made within twelve months next preceding the finding of the indictment was made in good faith for medicinal purposes, and that ginger was in fact mixed with the liquor by the druggist before it was delivered to the prosecuting witness, and it cannot be denied that this was the proper remedy for the sickness of which he complained, viz : cholic.

Also, because it was proven that the defendant was a regular druggist who was constantly filling prescriptions for physicians, and made it a part of his business to prescribe, himself, for acute diseases, and his judgment therein was relied upon by the community at large.

Also, because a druggist is as free to prescribe for a patient as any physician, and is presumed to be as capable of judging when a person is in need of spirituous liquor, wine, ale or beer, &c., as a physician, especially in the absence of any law prescribing *who* shall be the judge of the necessity of the purchaser.

And, lastly, because the State failed to prove *any* sale of " alcohol, spirituous liquors or wine " by the defendant, the only sale proven being the sale of a drug or medicine.

The statute does not prohibit a druggist from selling alcohol, spirituous liquors or wine, where it is done in good faith for medicinal or manufacturing purposes. (See Code, chapter 32, section 4.) And who is to judge of the purpose for which the liquor is wanted ? Is not the druggist bound to rely upon the *statement* of the purchaser ? Suppose the purchaser says he wants it for manufacturing purposes, is it the duty of the druggist to follow him up and see with his own eyes that the liquor is applied to the very purpose for which the purchaser represented that he wanted it ? Again, suppose a man comes from a distance and represents to the druggist that some one, on whose behalf he has come to the druggist, is sick and needs some whiskey or brandy to keep him up and give him strength, is not the druggist in duty bound to let him have the liquor ? The consequence of a refusal might be a prolongation of sickness or even death. It will not do to say that the prescription of a physician should be produced, for it may be that the attack is so sudden that a physician has not yet been in attendance ; or, as is the case in a great many instances, the

patient may refuse the services of a physician and rely upon his own judgment, or upon that of the druggist. Neither will it do to tell us that the whiskey shops, or grog shops are either open or closed, for it is notorious that their liquors are drugged, while on the contrary it is a popular belief that druggists keep a pure article of liquor. And this belief, be it said to the honor of the profession, is justified by the druggists of this, and as far as we are advised, of all other countries, who make it a point to acquire a reputation for keeping pure liquors and drugs that can be relied upon at all times for medicinal and manufacturing purposes. Who, then, would go to a grog shop for liquor for manufacturing or medicinal purposes, feeling and knowing as he must that in nine out of ten such places the liquors are drugged or adulterated? The very difference in the price of liquors at the one place from that of the other shows the difference in the degree of purity. It is well known that it costs much more for a pint of whiskey or brandy at a druggist's than at a grog shop, and this is because liquor can be so adulterated that one barrel of pure liquor can at very little expense be expanded into several barrels by adulteration, and it is notorious that this is constantly done by the keepers of grog shops and saloons. Shall it be said then that our laws are so inhuman that they drive the people, whose health and comfort should be first in the eye of the law, from a druggist, where they can get pure liquors, to a miserable grog shop where they will get—what? Alas! in too many instances nothing but rank poison, that only furnishes food for the disease to feed upon, and thus proves fatal to the patient it was intended and fondly hoped it would cherish and strengthen.

What physician of any respectability would send a patient to a grog shop for liquors, without first analyzing and testing the liquor himself? And are not the professions of druggist and medicine, that is druggist and physician, so near akin that they are inseparable? How would a physician at this day get along without his druggist upon whom he could rely to fill his prescriptions with accuracy of quantity and purity of quality?

But it has been said that a druggist, should not sell liquor at all, except upon the prescription of a physician. I deny the

proposition. The statute provides that a druggist may sell without a license, where the sale is in good faith for medicinal or manufacturing purposes. Now, that proposition would require the *prescription* of a physician, even where the liquor was purchased for *manufacturing purposes.* This serves to show the absurdity of the thing.

There is not one word about a prescription in the statute. It only requires that the druggist, when he sells the liquor, shall do so in good faith for medicinal or manufacturing purposes, and wisely leaves it to his own discretion to judge of the purposes for which it is wanted by the purchaser. If a druggist is deceived by a person feigning sickness and sells him liquor avowedly for medicinal purposes, is he to incur all the penalties of the law for another's sin? For the person that makes the misrepresentation with the *intent* to *deceive* is the real offender, and it may be, and often is the case, that malicious persons make such wilful misrepresentations for the very purpose of wreaking their revenge upon the unsuspecting victim, and using the strong arm of the law to deal the final blow. The fact that a druggist may be deceived is no argument against him, for are not the ablest of physicians sometimes deceived also?

It is said by some that a druggist must prove beyond doubt that the sale was for medicinal or manufacturing purposes. And again, that the statute provides that if the sale be proven it shall be presumed to have been in violation of the statute. Is not this in direct opposition to that good old maxim that every man shall be "presumed innocent until proven guilty?"

The druggist may make the sale in the very best of faith for medicinal or manufacturing purposes, and yet be deceived by the purchaser, who may take the liquor and become never so drunk with it. How is it possible in such a case for the druggist to prove his good faith? There may have been no one present but the druggist and the purchaser, and in fact there was not in this case. But suppose there had been several present, how could they possibly testify whether the druggist was making the sale in good faith for medicinal or manufacturing purposes? If such a doctrine as that is to prevail, no druggist could make a sale without making him-

self liable to a prosecution for unlawful retailing.  Not even the prescription of a physician would save him, for there is no law providing for a sale under prescription.  The accused, who is himself the only person that could really testify whether the sale was made in good faith for medicinal purposes, is not allowed to testify, and there is no faith of any kind required of the purchaser.  It seems to me that the State should at least be required to make out a *prima facie* case of an *intention* to violate the statute before the defendant is put upon his proof of good faith.  Happily, for as in this case, the State's own and only witness states that he not only procured the liquor for medicinal purposes, but actually had medicine mixed with the liquor by the druggist.  What better evidence of good faith could be given than this?

Suppose the druggist were himself a practicing physician, would the case be altered any?  I think not, for if the defendant *himself* could not be a witness, much less could his own written prescriptions be offered in evidence in his behalf, even though made in the best of good faith.

But let us now consider whether such a sale has been proven by the State as is charged in the indictment.  The indictment charges that the defendant "'did unlawfully sell, offer, and expose for sale at retail, spirituous liquors, wine, porter, ale, beer, and drinks of like nature."  There was no evidence offered of the sale or exposure for sale of anything but spirituous liquor, so we will take nothing into consideration but that.  The prosecuting witness says he complained of the belly-ache, and asked for whiskey ; that defendant mixed some whiskey and ginger together in a glass and gave it to the witness.  Now, the question is, what was the article sold by the defendant?  Could it be called whiskey or spirituous liquor, for they are the same?  (See U. S. Dispensatory, page 801, title, *spiritus frumenti.*)  It is clearly not that, for it has undergone a change; neither can it be called ginger, for it has also undergone a change.  Clearly it has become a *drug* or *medicine*.  And the name of this drug or medicine is *tincture* of *ginger* or ginger.  It might be well here to inquire what are tinctures?  " Tinctures, in the pharmaceutical sense of the term, are solutions of *medicinal* substances in alcohol or diluted alcohol."  (U. S. Dispensatory, p. 1380.)  And on the same

page it is said that "diluted alcohol or *proof spirit* is often preferable to officinal alcohol, as it is capable of extracting a larger proportion of those active principles of plants, &c. * * At the same time that it is strong enough in most instances to prevent spontaneous decomposition, and has the advantage of being cheaper and *less stimulating*."

On page 1,410, same work, we are told to " take of ginger, 8 troy ounces; alcohol (or proof spirit), *a sufficient quantity*, moisten * * * pack * * * and gradually pour alcohol (or proof spirit) upon it until two pints of *tincture* are obtained." So we have two pints of *tincture* of *ginger* from a sufficient quantity of alcohol. The alcohol has ceased to exist as alcohol or a spirituous liquor, and is converted into a drug or medicine. This is exactly our case. We took so much whiskey or spirits, and added it to so much ginger, and compounded of the two a *tincture of ginger*, and administered it as the proper remedy for the sickness of which the prosecuting witness complained. There was no alcohol, spirituous liquor, or wine sold. The only sale proven within the twelve months next preceding the finding of the indictment was the sale of this drug or medicine, which we must call tincture of ginger, for it can be nothing else. It is true the witness *asked* for whiskey, but the druggist, when informed of his complaint, knew exactly what was good for him, and instantly prepared the proper *medicine* or tincture. He did not sell him any whiskey; but even if he had, as before shown, it was a matter entirely within his own discretion. If, in his judgment as a druggist, the purchaser really was in need of the liquor for the purpose represented, it was not only his privilege but his duty to furnish it to him, just as much as it was to furnish any other article kept by him for sale.

For the general uses of ginger and the tincture of ginger, see Stille's Therapeutics and Materia Medica, vol. 1, p. 619. It will there be seen that it is used for cholic and generally as a stomachic stimulant.

The Attorney General for the State.

BERKSHIRE P. The only error complained of in this case, is the ruling of the court below on the defendant's motion to

set aside the verdict, and grant him a new trial upon the ground that the verdict was contrary to the evidence.

The appellant was indicted for selling spirituous liquors, &c. without a license. It appears that at the time of the alleged sale, he was a regular druggist, living and doing business in the town of Point Pleasant, in Mason County. By the 4th section of chapter 32 of the Code, p. 203, druggists are authorized to sell, in good faith, for medicinal or manufacturing purposes, alcohol, spirituous liquors and wine. But in any prosecution against a druggist for selling such without a license, " if a *sale* be proved, it shall be presumed that such sale was in violation of the section, unless the contrary be shown."

In this case it is not claimed that the appellant, at the time of the alleged sale had any *license* to sell spirituous liquors, &c., and a sale having been distinctly proved on the trial, the presumptions of the law arose against him, and it thereupon devolved on *him* to repel such presumptions by showing the *bona fides* of the transaction. Does it clearly appear from the record that he did so on the trial? Whether he did so or not, was a question of fact to be determined by the jury, and in their judgment he failed to show the good faith of the sale, and hence the verdict was against him. And the question now is whether it was warranted by the testimony, or rather whether it was plainly *against* it.

It appears that only two witnesses were introduced on the trial. One was on behalf of the state, and proved that he went to the appellant's drug store, in Mason county, and told him he was sick and wanted some whiskey, and upon being asked by the appellant what was the matter, he replied he had the "belly-ache." Whereupon, the appellant mixed some whiskey and ginger in a glass and gave it to the witness, who drank it and paid appellant for it. That the whiskey, witness said, was very hot with ginger, and that at that time, the whiskey shops were all closed. Also, that he had got whiskey there several times before, but that it was always mixed with medicine, and always got for medicinal purposes.

The other witness was introduced on behalf of the appellant, and proved that he was a regular druggist, and made it a part of his business to fill prescriptions for physicians, and

in the course of his business frequently prescribed for acute diseases, and that his judgment thereon was relied upon.

Under this state of facts, I do not think we can, with propriety, say the verdict of the jury was clearly unsupported by the testimony, and ought therefore to be set aside. It will be observed that the witness for the state, although he says he *told* the appellant he was sick, did not state that he was in *fact* sick, nor that there was no understanding between him and the appellant that he should *feign* or represent himself to be sick, for the purpose of procuring the whiskey, in violation of law ; and further, that he did not call for medicine or for ginger, but for whiskey *only*, and applied to the druggist only, because the whiskey shops were then closed.

The jury, it would seem, came to the conclusion, that the sickness of the witness was probably *feigned* (which was understood by the appellant) and used as a pretext for procuring and selling whiskey in violation of law, and in my view, it cannot be said such a conclusion is wholly unwarranted by the testimony.

The judgment must therefore be affirmed with costs and damages.

JUDGE MAXWELL concurred with BERKSHIRE P.

JUDGE MOORE was of opinion that the evidence for the *State* sufficiently repelled the presumptions of the law against the appellant, arising upon the proof of the sale, and was insufficient to warrant the verdict.

JUDGMENT AFFIRMED.