# CHARLESTON.

## STATE v. NICHOLS.

### Decide October 18, 1910.

1. INTOXICATING LIQUORS—*Illegal Sale by Agent—Liability of Saloon Keeper.*

   An unlawful sale of intoxicating liquors made by the agent, or bartender, of a licensed saloon-keeper, at his place of business, is a sale by both, and the saloon-keeper, as well as his agent, is liable.

2. SAME—*Unlawful Sale—Nature of Offence.*

   In such case the saloon-keeper can not escape liability on the ground that his agent made the unlawful sale without his knowledge and in violation of his express instructions. The unlawful sale constitutes the offence, and the seller's motive is immaterial.

3. SAME—*Illegal Sale to Minor.*

   If a licensed saloon-keeper, or his agent, deliver intoxicating liquor to a minor and receive from him the money therefor under the belief, however induced, that the minor is buying as agent for another whose identity is unknown and is not disclosed, it constitutes a sale to the minor.

Error to Circuit Court, Cabell County.

J. H. Nichols was convicted of illegally selling intoxicants to a minor, and he brings error.

*Affirmed.*

*Lewis D. Isbell,* for plaintiff in error.

*William G. Conley,* Attorney General, for the State.

WILLIAMS, JUDGE:

J. H. Nichols, the proprietor of a hotel and a licensed saloon-keeper in the City of Huntington, was convicted in the crim-

inal court of Cabell county for unlawfully selling spirituous. liquors to Frank Peabody, a minor, and on the 3d of March, 1908, was fined $50. The judge of the circuit court of said county refused a writ of error, and one was awarded by this Court.

It is insisted that the verdict is against the evidence, and that the criminal court erred in overruling a motion to set it aside and grant defendant a new trial; and that it also erred in refusing to give the jury certain instructions, and in refusing to permit a certain question to be answered by defendant's witness.

The state proved that Frank Peabody, a boy 17 years old, bought from William Reible, defendant's bartender, a half pint of whiskey in June, 1907, and paid him the money for it. These facts are not controverted. The defense is that the sale was not made to the boy, who was at the time serving as bell-boy in the hotel of defendant, but that it was made to some guest in the hotel, through the boy who was simply acting as agent of the purchaser. But the boy did not say that he bought the whiskey for any person other than himself, or that he told the bartender that he wanted it for a guest of the hotel. Nor does it appear that the bartender even inquired of him whether he was getting the whiskey for himself, or for another person to whom the saloon-keeper may have had a right to sell. So that, upon these uncontradicted facts, it becomes a question of law whether, or not, it was an unlawful sale. Section 21 of chapter 32, Code 1906, makes it a penal offence for a person, having a state license, to sell or give spirituous liquors, wine, porter, ale, beer, etc., to a minor; and section 23 of the same chapter says that a sale by one person for another shall be deemed a sale by both, and makes both liable, either jointly or severally. Hence, it is not material to inquire whether, or not, Reible was instructed by the defendant not to sell to minors. There is no pretense that the sale by Reible was not *for* Nichols, and being made by his agent for him, the statute says it is a sale by both Reible and Nichols. Consequently, the intent of Nichols to observe the law is immaterial. The question of his intention is not an ingredient of the offence. The act of making the sale is a positive act implying volition, understanding, will; from its very nature a sale could never be accidental. One

can not make sale of an article, and receive the money for it without knowing it, and without *willing* to do the act. It is the sale alone that constitutes the offence, and the law does not stop to inquire into the motives of the seller. Whatever the motive may be, it can not change the nature of the offence.] *State* v. *Denoon,* 31 W. Va. 125; *State* v. *Gilmore,* (Vt.) 68 Atl. 658; *State* v. *Kittle,* 110 N. C. 560; *McCutcheon* v. *People,* 69 Ill. 606; *Mogler* v. *State,* 47 Ark. 110; *Snider* v. *State,* 81 Ga. 753; *Whitton* v. *State,* 37 Miss. 379; *Carroll* v. *State,* 63 Md. 551; *State* v. *Hartfiel,* 24 Wis. 60; *People* v. *Roby,* 52 Mich. 577; *City of Paducah* v. *Jones,* (Ky.) 104 S. W. 971; Woollen & Thornton on Intoxicating Liquors, section 725; Black on Intoxicating Liquors, section 418. However, the decisions of the courts of the several states are not uniform on this question. A large number of them hold that an unlawful sale made by the agent without the knowledge and assent, express or implied, of the principal; or a sale made in violation of his express directions, is not a sale by the principal. A number of decisions taking this view of the law are cited in the case of *State* v. *Gilmore,* (Vt.) • 68 Atl. 658. But the better view seems to us to be the one followed by this Court in *State* v. *Denoon, supra.*

[A licensed saloon-keeper usually conducts the business of selling liquors through agents, clerks, or bartenders, not in person; and if he were permitted to defend an indictment for unlawful selling, on the ground that his bartender had violated his instructions, the result would be that a conviction in many such cases could not be had, and the statute, in a large measure, would be defeated. Such a defense is of a kind that is easy to manufacture to suit the emergency, yet difficult to overthrow, and many unscrupulous persons would not hesitate to fabricate such facts as would be needful to accomplish their defense.]

We do not see how the jury could have found any other verdict upon the evidence than "guilty." The boy, at the time in question, was a bell-boy in defendant's hotel. The defense which was sought to be made is, that it was customary for the bell-boy to get whiskey for the guests of the hotel, on their orders, and carry it to their rooms, and that Reible thought the boy was getting the whiskey on this occasion for a guest, and let him have it in good faith, believing it was for a guest. But

there is no evidence that the boy told Reible that he was getting the whiskey for another. Reible's testimony on this point is as follows:

"Q. About the latter part of June, 1907, Frank Peabody says that he purchased a half pint of whiskey from you—state what was said when he made that purchase and what it was for.

A. He purchased it for up stairs for the rooms—he always taken the order up and fetched the money—he was there as bell-boy and would get the orders and take them up."

It will be observed that he does not say that the boy told him he had an order from a guest for the whiskey, or that the boy said anything which would justify the inference that he was getting it for any one but himself. If Reible thought that a guest of the hotel had sent the boy for the whiskey, it was his duty, at least, to have ascertained who the principal was, and what authority the boy had to act for him. The evidence shows that Reible was culpably negligent in this respect. Viewing the evidence in the light most favorable to defendant it proves that his bartender delivered whiskey to a bell-boy in defendant's hotel, whom he knew to be a minor, and received the money therefor from him, under the impression and belief that the bell-boy was getting it for some guest in the hotel who was unknown to the bartender. But it does not follow that a lawful sale could be made to every guest. The guest might himself be an infant. It seems to be a rule of law well settled by decisions, and recognized by all text writers on the subject, that where a sale of intoxicating liquor is made to a minor for an undisclosed principal, it is a sale to the minor. 17 A. &. E. E. L. (2nd ed.) 337; 23 Cyc. 196; and Black on Intox. Liq., section 420. This rule of the criminal law is not inconsistent with the general law of agency which treats a contract made by an agent with a third person, for an undisclosed principal, as the contract of either the agent or his principal, at the election of the other contracting party after he has discovered the principal and the relation of agency. This is generally true whether the agent assumed to act in an individual capacity or as the agent for another who is not disclosed. Story on Agency, section 160; 1 Clark & Skyles on Agency, section 457; 2 *Id.,* sections 568 and 569; 1 A. & E. E. L. 1124; 31 Cyc. 1574.

"If liquor is sold to a minor who at the time declares that he is purchasing it for another whose name is not disclosed the sale must be regarded as made to the minor, and not to the undisclosed principal, and the seller is liable to punishment under a statute making it criminal to sell liquor to a minor". *Neeley* v. *State,* 60 Ark. 66 (46 Am. St. Rep. 148).

In *Ross* v. *People,* 17 Hun. (N. Y.) 591, Ross was convicted of selliing liquor to a minor, under a statute of New York almost identical with the statute of West Virginia, forbidding sales of liquors to minors. The boy purchased the liquor as agent for one Martin, an adult, who lived in the home with him, and with money furnished by his principal, but did not disclose his principal. It was held "that the conviction was proper, and that the fact that the boy was acting as agent for an undisclosed principal did not relieve the accused from penalties imposed by the statute."

In *Ritcher* v. *State,* 63 Miss. 304, the defendant was convicted of selling to a minor and offered to prove that the minor purchased as agent for the minor's uncle and for the uncle's use with money furnished by him. The trial court excluded this evidence, and it was held not error because there was no offer to prove that the agency was known at the time of the sale. "For if the minor was acting as agent it was an agency for an undisclosed principal, and as in such case either might be treated as the buyer of the liquor, R. is guilty of the charge of selling to the minor."

Under a statute of Massachusetts forbidding the sale, or delivery, of intoxicating liquor to a minor, the Supreme Court held that it was a violation of law to deliver it to a minor even as agent for a *disclosed* principal. *Commonwealth* v. *Joslin,* 158 Mass. 482.

In *Holmes* v. *State,* 88 Ind. 145, it was held to be no defense that the minor told the saloon-keeper at the time of buying the whiskey that it was for his sick mother, and that the saloon-keeper was induced to believe the statement from the fact that his mother had on two or three previous occasions sent him for whiskey, and that the saloon-keeper acted in good faith. See also *Sumner* v. *State,* 4 Ind. App. 403; *State* v. *McLain,* 49 Mo. App. 398; *Horsky* v. *State,* 36 S. W. 443. (Tex. Crim. App., June, 1896).

"Although a minor acts as the agent of his parent in purchasing liquor, if that fact be not disclosed to the seller at the time of the purchase, and the sale is made without the parents' written consent or order, it is unlawful and a subsequent disclosure of the agency will not avoid a conviction." *Siceluff* v. *State*, 63 Ark. 56.

In *Commonwealth* v. *Barry*, 124 Mass. 324, Barry was convicted of selling intoxicating liquor to Robert E. Devine, a minor. It appears that Devine had authority from his mother to get whiskey for her use and on her account, and had done so frequently; but on the occasion in question he and two other boys made up the sum of twenty-five cents and went to defendant's place of business and bought a bottle of whiskey. The supreme court upheld the following instruction given by the trial court, viz: "That if Devine, when he bought the whiskey, acted under authority from his mother, and bought it for her, the defendant could not be convicted; but if he did not act under authority from her, but bought the whiskey for himself and the other boys, it would be a sale to him, although he had authority from his mother to buy for her, and stated to the defendant that he was buying for her, and the defendant believed that he was so buying."

The recent decision by this Court, *State* v. *McNeal,* harmonizes perfectly with the foregoing authorities. In that case the father, Ben Jaggie, had told McNeal, the saloon-keeper, to let his son Joe, a minor, have spirituous liquors whenever he sent him with a written order for it. McNeal delivered whiskey to Joe Jaggie on a written order from Joe's father and he carried it to his father. That was a very different case from the one under review. That was clearly not a sale to Joe Jaggie but only a delivery of the goods to him on a sale to the father, a known purchaser. In the present case there is no evidence that the minor, Frank Peabody, was acting as an agent for either a disclosed or an undisclosed principal, hence there can be no question that the sale was made to him.

There seems to be no conflict in the decisions on the question that a sale of intoxicating liquors to a minor who buys as agent for an undisclosed principal, is a sale to the minor in view of statutes forbidding sales of such liquors to minors.

The court refused to give defendant's instructions numbered 1, 2 and 3, and this is assigned as error. · No. 1 would tell the jury that they must believe that the sale of whiskey was to Frank Peabody "and not for the guests of the hotel," before they could find defendant guilty. No. 2, that the defendant was not guilty unless his bartender knew at the time of the sale that the whiskey "was not ordered for the guests of the hotel." And No. 3, that "they must believe beyond reasonable doubt and to the exclusion of every other reasonable hypothesis that the defendant knew or had reason to believe that the whiskey was not for the guests of the hotel."

These instructions are bad and were properly refused because they do not state the law of the case. There is no evidence that the boy was buying the whiskey for any person other than himself. The fact that the whiskey had been delivered to the boy and the money received from him at the time by the bartender, is not denied. In legal contemplation, this establishes a sale to the boy, whether he was buying for himself or for an undisclosed principal.

It is assigned as error that the court refused to allow witness Reible to answer the following question, viz: "State whether or not, if you, as bartender at the West Virginia Hotel, did not let, or was in the habit of letting this boy take up drinks ordered by the guests at that hotel, to the guests at their rooms." It is not shown what answer the witness was expected to make to this question, and we do not see that the defendant was prejudiced by the court's refusing the answer to be given. Furthermore, the question is objectionable in form, being leading and suggestive of the answer desired. Even if we could infer that the answer, if allowed to be given, would have been in the affirmative, still it could not have aided the defendant's cause. If it was, in fact, the custom for the boy to "take up drinks ordered by the guests at the hotel," it does not follow that previous acts, constituting the custom, were not also violations of law; neither does it follow that the facts in other instances were similar to the facts in this case.

We find no error in the record and the judgment of the criminal court of Cabell county will be affirmed.

*Affirmed.*