# CHARLESTON.

## STATE v. DAVIS.

Submitted September 15, 1910.     Decided November 15, 1910.

1. WITNESSES—*Compelling Accused to Criminate Himself—"Private Papers and Documents."*

    The written prescriptions of practicing physicians on which a licensed druggist has made sales of intoxicating liquors, and which he has preserved in his possession, as the statute directs, are not his private papers and documents, within the meaning of the constitutional guaranty against compulsory self crimination.

2. CRIMINAL LAW—*Compelling Accused to Criminate Himself— "Public Documents."*

    Such prescriptions are *quasi* public documents, and the constitutional privilege is not violated by compelling a druggist, who stands indicted for unlawfully selling spirituous liquors, to produce them in court in order that they may be used as evidence against him on his trial.

3. INTOXICATING LIQUORS—*Sale by Druggist—Prescription.*

    A licensed druggist can not sell intoxicatng liquor to a practicing physician, except upon the written prescription of a practicing physician in good standing in his profession, and not of intemperate habits.

4. SAME.

    Such prescription must state substantially the following, viz: (1) the name of the person for whom prescribed; (2) the kind and quantity of liquor; (3) that it is absolutely necessary as a medicine for such person; and (4) that it is not to be used as a beverage.

5. SAME.

    A written order addressed to a licensed druggist and signed by a practicing physician, in the following words, viz: "Send me OJ spts. whiskey and oblige.   12-12-09," is not a lawful prescription for intoxicating liquor, and a sale made thereon is unlawful.

6. SAME

    When a sale of intoxicating liquors is proven to have been made by a licensed druggist, it is presumed to have been unlawfully made, and the burden is then cast upon him to rebut such presumption.

7.  CRIMINAL LAW—*Appeal—Harmless Error.*
     The verdict of a jury will not be reversed on account of
     the admission of improper testimony or the giving of an
     erroneous instruction when it clearly appears that, if such evi-
     dence had been excluded and such instruction refused, the result
     could not thereby have been changed.  Such error is not pre-
     judicial.

8.  SAME—*Punishment—Second Conviction—Pleading—Evidence.*
     In order to warrant the imposition of the increased penalty
     imposed for a second conviction, by section 5 of chapter 32,
     Code (1906), a former conviction must have been alleged in the
     indictment, and also proven.  The court can not take judicial
     knowledge of a former conviction for the purpose of imposing
     the penalty prescribed for a second conviction.

Error to Circuit Court, Barbour County.

W. O. Davis was convicted of an illegal sale of liquor as a
druggist, and brings error.

*Reversed and Remanded.*

*Warren B. Kittle,* for plaintiff in error.

*William G. Conley,* Attorney General, for the State.

WILLIAMS, JUDGE:

The defendant, a licensed druggist in the Town of Philippi,
was indicted and convicted for making an unlawful sale of
spirituous liquors, and the court, proceeding on the theory that
it was a second conviction, adjudged him to pay a fine of $500,
sentenced him to be confined in the county jail thirty days, and
revoked his license.  On writ of error granted, defendant as-
signs numerous grounds which he insists call for a reversal
of the judgment, and a setting aside of the verdict.  It is not
necessary to take them up *seriatim,* because they are all so near-
ly related that the decision of two or three of the leading ques-
tions involved will dispose of all the rest.

It is assigned as error that defendant was compelled, over his
protest, to produce evidence against himself.  It appears that
when the witness, George Barnes, a registered pharmacist who
was engaged in the service of defendant, was testifying on be-
half of the State, he was asked if he had access to the physicians'
prescriptions on which whiskey, and other spirituous liquors,
had been sold within the year next prior to the indictment, and

he said he had; he was then asked if, on the 12th of December, 1909, a paper in the following language was delivered to defendant, viz: "Dr. Davis, Send me OJ spts. *whisky* and oblige 12-12-09. E. H. Stump." Witness stated that he did not remember; and he was asked to look and see. He replied that he had access to the prescriptions when they were in the store. But it appears that defendant himself was present at the trial, and had the orders and prescriptions in his possession, and witness was requested to ask defendant for them, to be used for the purpose of refreshing his recollection. The court directed defendant to turn them over to him, which he did under protest, and excepted. An order in the language above quoted was found amongst them. This witness was also examined by the attorney for the state in relation to a number of other orders, more or less similar to the one in question, signed by E. H. Stump. Some of which were as follows, viz: "Send me OJ of spts. I want to mix. I send pay and oblige. E. H. Stump."

"Dr. Davis: Give Mr. Peoples one half pint of spirits of some kind for a pain in his side. He is suffering. Add ZSS of ginger to it. 12-12-09."

Did the court err in compelling defendant to produce the orders and prescriptions, to be used as evidence against him? Was this compelling defendants to produce evidence to convict himself, in violation of the privilege secured to him by section 5 of Article III of the Constitution of West Virginia, which says, that "no person in any criminal case shall be compelled to be a witness against himself?" It is well settled that the spirit of this fundamental law protects a person against compulsory production of any of his private papers and documents, which would tend to criminate him. 3 Wigmore on Evidence, sec. 2264; *Lawson* v. *Boyden,* 160 Ill. 613; *Minters* v. *People,* 139 Ill. 363; *Logan* v. *Railroad Co.,* 132 Pa. St. 403; *Boyd* v. *United States,* 116 U. S. 616; *Entick* v. *Carrington,* 19 How. St. Tr. 1029; 1 Greenleaf on Evidence, (16th Ed.) sec. 469; 1 Wharton on Evidence, secs. 533-4. But are the prescriptions of a physician on which a druggist is authorized to sell intoxicating liquors, and which the statute requires him to file and preserve, his private papers, within the meaning of this constitutional safeguard? We hardly think so. They partake too much of the nature of public documents. They constitute the only authority

under which a druggist can legally sell intoxicating liquors, except alcohol for scientific and mechanical purposes. A druggist is not required to have a general license to sell intoxicating liquors; and a physician's written prescription is,·in a sense, his special license to do an act which, without such prescription, would be unlawful. The sale of intoxicating liquors is regulated by law; it is not a business in which everyone has a right to engage; and a druggist can lawfully sell it only upon one condition, that is, "upon the written prescription of a practicing physician in good standing in his profession, and not of intemperate habits." The statute, moreover, prescribes what the prescription must contain; and it must be in substantial compliance therewith, else it does not authorize the druggist to sell. Section 6 of chapter 32, Code. *State* v. *Bluefield Drug Co.*, 43 W. Va. 144; *Stale* v. *Tetrick*, 34 W. Va. 137.

Section 7 of chapter 32, Code, reads in part as follows: "Every such prescription and statement shall be filed and preserved by the druggist selling such liquors thereon, and the same shall be open and subject to the inspection of the prosecuting attorney of the county, or any member of a grand jury thereof, or the husband, wife, or any relative of the person to whom such liquors were sold; and any druggist or person in charge of such prescriptions and statements who shall wilfully fail or refuse to produce the same, when demanded for inspection by any of the persons aforesaid, shall be guilty of a misdemeanor and fined not less than twenty nor more than one hundred dollars." The very purpose of the statute is to enable the prosecuting attorney, and the other persons named, to ascertain whether or not, the druggist is acting in good faith and is complying with the law under which he is exercising a privilege, not a right; and shall we say that the prescriptions may be examined in order to discover whether the law has been violated, but can not be used as evidence to prove the violation if one is discovered? This would be a very unreasonable view to take, we think. The statute, by giving to the prosecuting attorney, the right to demand an inspection of the orders and prescriptions, necessarily carries with it the right to use them as evidence in the trial against the druggist for unlawful selling. They are, at least, *quasi* public records, or documents; and the fact that the druggist is permitted to retain possession of them, subject to the right of inspection

by certain named persons, does not change their public character. Therefore, unless the statute itself is a violation of the constitutional guaranty, the court did not violate it by requiring defendant to produce the orders and prescriptions.

The State of Missouri has a statute similar to our own, except that it expressly says the druggist shall produce the prescriptions "in court or before any grand jury, whenever thereto lawfully required." A druggist in that state was indicted for refusing to produce before the grand jury, for their inspection, the prescriptions in his possession when he had been lawfully summoned to do so. A demurrer to the indictment was sustained by the lower court, on the ground that the statute was in violation of both the Constitution of Missouri and the Constitution of the United States. But the Court of Appeals reversed the lower court, and held that the prescriptions of physicians filed with a druggist were not the druggist's private papers and that the law requiring him to preserve them and produce them in court was constitutional. *State* v. *Davis,* 108 Mo. 666 (32 Am. St. Rep. 640.)

In *Bradshaw* v. *Murphy,* 7 C. & P. (Eng.) 612, it was decided that "A vestry clerk who is called as a witness, cannot, on the ground that it may criminate himself, object to produce the vestry book, kept under the stat. 58 Geo. 3, c. 69, s. 2." In *People* v. *Coombs,* 158 N. Y. 532, the court of appeals of New York held that the defendant, a coroner, who was indicted for making false and fictitious inquest papers for the purpose of being filed with the county clerk at some future time, and on which he had fraudulently received fees, could not shield himself from producing such papers upon his trial, on the ground that they would tend to criminate him. The court took the view that these were public records, and were intended to be used as such, and that a public officer can not be privileged to retain in a public office a fraudulent record, made for the purpose of concealing a fraudulent claim for fees.

The following cases, however, are more particularly in point. Under a statute in the State of Iowa, regulating the sale of intoxicating liquor by druggists, they are required to make verified monthly reports of the number of sales made by them, and file them with the county auditor; and it was held by the supreme court of that state, in the two cases of *State* v. *Smith,*

74 Iowa 580, and *State* v. *Cummins*, 76 *Id*. 133, that such reports could properly be used as evidence against a druggist indicted for making an unlawful sale of liquors, or indicted for the crime of maintaining a nuisance by keeping a place for the unlawful sale of intoxicating liquors.

A statute of North Dakota requires a druggist to "keep a book wherein shall be recorded, daily, all sales of intoxicating liquors made by him or his employees, showing the name and residence of the purchaser, the kind and quantity of the liquors sold, the purpose for which it was sold and the date of the sale." This record is, by statute, open for the inspection of the public at all reasonable times during business hours, and any person so desiring may take memoranda, or copies thereof. It is also made a misdemeanor, for which a penalty is imposed, if a druggist fails to keep such a record, or refuses an inspection of it. In *State* v. *Donovan*, 10 N. D. 203, which was an action to abate a liquor nuisance kept and maintained by the defendant, it was held that the trial court did not err in requiring the defendant to produce the record of sales made by him, as evidence against himself upon the trial.

The fact that our statute makes the prescriptions subject to examination by a few persons only, instead of by the public generally, does not constitute them private papers within the meaning of the constitutional privilege. If they were, in fact, private in their nature, and within the spirit of the constitutional guaranty they could not lawfully be made subject to inspection by any one, without the consent of the druggist.

Another case very much in point, is *McElree* v. *Darlington*, 187 Pa. St. 593. In that case the Chester County Guaranty, Trust and Savings Deposit Company, a corporation, authorized by its charter to receive money on deposit, advertised that it would pay five per centum on deposits. Mary A. Burnett deposited with it $1,300.00 on December 2, 1896. Within two months thereafter a bill in equity was filed against it by some of its creditors, stockholders and depositors, alleging its insolvency and praying for an injunction restraining it and its officers from disposing of its assets, and also praying for an investigation of its affairs, and for the appointment of a receiver. It answered admitting its insolvency, and receivers were appointed on the 12th of February, 1897. A large number of the depositors, includ-

ing Mary A. Burnett, then presented a petition to the court of common pleas asking for the appointment of an accountant to examine the books, papers, accounts, and securities of said corporation. At the time this petition was filed the president of the corporation stood indicted for embezzling from Mary A. Burnett $1,300.00, in that he had received from her said amount of money, with knowledge, at the time, that he and the corporation he represented were insolvent. The purpose of the examination of the books was to ascertain the condition of the corporation at the time when the deposit was made, for receiving which the president stood indicted. The petition was dismissed by the lower court, on the ground that to permit the inspection of the books would be an infringement of the constitutional guarranty against self incrimination. But, upon appeal, the Supreme Court of Pennsylvania reversed the lower court, and held that the books and papers of the corporation were not the property of its officers, or its employees, and that they could not be regarded as privileged so as to shield the officers against the consequences of the frauds which they may have perpetrated in their respective spheres of duty.

We are of the opinion that the prescriptions of a physician, on which a druggist makes sales of intoxicating liquors, and which he is required to file and preserve, are not privileged documents within the constitutional guaranty against compulsory self incrimination; and that the lower court did not err in requiring the defendant to produce them in court. The order for whiskey, dated 12-12-09, and signed E. H. Stump, is not a physician's prescription on which defendant could lawfully sell intoxicating liquors, and the filling of the order by defendant constituted an unlawful sale.

There is another reason why the court committed no error in overruling defendant's motion to set aside the verdict, which is entirely independent of the reason above given. A sale, in fact, a number of sales of intoxicating liquors were proven to have been made by defendant, by the testimony of the prosecuting attorney who says that defendant had, previous to the trial, shown him his orders and prescriptions, and admitted to him that every one of them represented a sale. He further says that defendant claimed that he was entitled to have prescriptions substituted for some of the orders. This testimony is not dis-

puted, and it clearly proves a sale, independent of the production of the orders and prescriptions in court, although it does not, taken by itself, prove a sale upon the particular order in question. But a sale upon that particular order is immaterial, as the statute, section 6 of chapter 32, says: "In any prosecution against a druggist for selling alcohol, spirituous liquors, wine, porter, ale, beer, or other intoxicating liquors, without a license therefor, if the sale be proven it shall be presumed that the sale was unlawful in the absence of satisfactory proof to the contrary." *State* v. *Miles*, 5 W. Va. 524; *State* v. *Bluefield Drug Co.*, 43 W. Va. 144. It mattered not whether the sale, or sales, had been made by defendant himself, or by his clerk. *State* v. *Denoon*, 31 W: Va. 122; *State* v. *Nichols*, 67 W. Va. 659. Neither was it necessary to prove that the sale was made to any particular person, as a sale to any person, unless upon a 'written prescription of a practicing physician, (excepting a sale of alcohol for mechanical or scientific purposes) would be unlawful. Section 6 of chapter 32, Code; *State* v. *Ferrell*, 30 W. Va. 683. The prosecuting attorney's testimony proved a sale; his testimony was not denied, and the law presumes that the sale was unlawful; defendant did not attempt to rebut this presumption. He did not testify; neither did he produce any evidence which conflicts with the testimony of the prosecuting attorney. Hence, it clearly appears, after excluding the prescriptions and also the testimony of witness Barnes in relation to them, that the remaining evidence proves a sale. It, therefore, became incumbent on defendant to justify the sale, by the production of the prescription in proper form; this he made no attempt to do. Consequently, in view of the uncontradicted testimony of the prosecuting attorney, we clearly see that defendant could not have been prejudiced by the use of the orders and prescriptions as evidence against him, even if we had held that they could not be lawfully so used; there would have been enough other evidence, not contradicted, still remaining, to support the verdict. The jury could not have lawfully disregarded this evidence; to have done so would have been a finding against evidence, and, in such event, it would have been the court's duty to set the verdict aside.

It is not necessary for us to decide whether, or not, the court erred in allowing the prosecuting attorney to testify in rela-

tion to the large number of orders and prescriptions found on the files of the druggist, that were issued by Dr. Stump, and the per centum that such prescriptions bore to the whole number on file. It clearly appears to us that defendant was not prejudiced by such evidence; because, after excluding it, we see that the remaining evidence, which is in nowise contradicted, clearly proves a sale; and for the same reason defendant could not have been prejudiced by the state's instruction embodied in bill of exceptions No. 4. Only prejudicial error calls for a reversal. *Davis* v. *Living,* 50 W. Va. 431; *Taylor* v. *Railroad Co.,* 33 W. Va. 39; *State* v. *Hull,* 45 W. Va. 767. Whether defendant intended to violate the law by making the sale, or not, is immaterial; the law looks upon the intention in such cases as immaterial. *State* v. *Denoon,* 31 W. Va. 122; *State* v. *Nichols,* 67 W. Va. 659.

This brings us to a consideration of the court's judgment rendered on the verdict. The severe judgment was rendered, pursuant to section 5 of chapter 32, Code, on the theory that defendant had been convicted of a second offense. The indictment, however, does not allege that defendant had been previously convicted of a like offense. But the court's order contains the following recital, viz: "and it being made to appear to the Court that there was a former conviction of the defendant at a former day of this Court," etc. But, how it was made to appear is not shown by the record. The judge certifies that the transcript contains "all the evidence adduced upon the trial;" and it contains no proof of a former conviction; neither can we see how a former conviction could have been properly proven, as there is no such allegation in the indictment; there is no pleading on which to base such proof, if it had been offered. The matter of a former conviction is an essential part of the indictment; it must be alleged and proven by the record, if not admitted by the defendants plea, in order to warrant a judgment for a second conviction. The court could not take judicial notice of a former conviction, as was apparently done in this case, even though such former conviction may have been had in the same court, and on a previous day of the term at which the present trial was had. *Pickens* v. *Boom Co.,* 66 W. Va. 10; *United State* v. *Bliss,* 172 U. S. 326. Defendant was entitled to be informed by the indictment of the matter with which he

was charged; it did not charge him with a previous conviction, but only with a single unlawful sale.

The following authorities and decisions hold that the indictment must allege the first conviction, before the added penalty can be imposed; some of them go so far as to hold that the second offence must be shown to have been committed after the first conviction, on the theory that if the first penalty does not work a reformation of conduct in the guilty party, and he thereafter commits a second offence, he should be then dealt with more severely. But it is unnecessary for us to decide whether it is necessary that the former conviction should have been had before the commission of the second offence, as this point does not arise in this case. We, therefore, simply hold that it was error for the court to take judicial notice of a former conviction, and that, in order to admit proof of a former conviction, it must be alleged in the indictment. *Rand* v. *Commonwealth,* 9 Grat. 738; *People* v. *Butler,* 3 Cow. (N. Y.) 347; *Maguire* v. *State,* 47 Md. 485; 1 Bish. Crim. Law, sec. 961; *Rex* v. *Allen,* Russ. & R. 513; *Reg.* v. *Page,* 9 Car. & P. 756; *Wilde* v. *Commonwealth,* 43 Mass. 408; *Plumbly* v. *Commonwealth, Id.* 413; *Commonwealth* v. *Welsh,* 2 Va. Cases 57; *Long* v. *State,* 36 Tex. 6; *Garvey* v. *Commonwealth,* 8 Gray 382; *Walters* v. *State,* 3 Iowa 507; *Smith* v. *Commonwealth,* 14 S. & R. (Pa.) 69; *Kane* v. *Commonwealth,* 109 Pa. St. 541.

The judge should have rendered his judgment upon the verdict, as for a single offence. Section 5 of chapter 32, Code, (1906), fixes the penalty in such case at a fine of not less than fifty dollars nor more than two hundred dollars. Because of the discretion with which the law vests the trial court in regard to the amount of the fine, we will not enter judgment upon the verdict, but will reverse the judgment, and remand the case for the entering up of a proper judgment on the verdict, by the court below.

*Reversed and Remanded.*