### JOHN GUND BREWING CO. v. UNITED STATES (two cases).†

(Circuit Court of Appeals, Eighth Circuit. March 3, 1913.)

#### Nos. 3,854, 3,855.

1. CRIMINAL LAW (§ 263\*)—JURISDICTION OF FEDERAL COURT—ARREST—DIFFERENT DISTRICT.

   Rev. St. § 1014 (U. S. Comp. St. 1901, p. 716), providing that for any crime or offense against the United States the offender may be arrested where he may be found, and agreeably to the usual mode of process against offenders in the state where he is found, and may be imprisoned or bailed at the expense of the United States as the case may be for trial before such court of the United States as by law has cognizance

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

204 F.—2          † Rehearing denied June 30, 1913.

of the offense, applies only to accused persons who may be imprisoned, and cannot apply to a corporation which cannot be arrested or held to bail for its appearance.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 610, 611; Dec. Dig. § 263.*

Jurisdiction of federal courts over corporations. See note to St. Louis, I. M. & S. Ry. Co. v. Newcom, 6 C. C. A. 174.]

2. CRIMINAL LAW (§ 263*)—FEDERAL COURT—PROCESS—STATUTES.

Rev. St. § 716 (U. S. Comp. St. 1901, p. 580), provides that the Supreme Court and the Circuit and District Courts shall have power to issue all writs not specifically provided for by statute which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and principles of law. *Held*, that where a corporation domiciled in Wisconsin was charged in indictments returned to the District Court sitting in North Dakota with having engaged in the liquor business in that state without having paid the internal revenue tax and with other corelated offenses committed through agents, such section authorized the court to issue writs conformable to the statutes of North Dakota and direct the service thereof by the marshal of the district of Wisconsin in which the defendant resided, requiring it to answer the indictments in North Dakota.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 610, 611; Dec. Dig. § 263.*]

3. CORPORATIONS (§ 526*)—OFFENSES—PUNISHMENT—PLACE OF TRIAL.

Since the only punishment that can be inflicted on the corporation is a·fine, a criminal proceeding against it is in effect an action to recover a penalty subject only to the requirements of the sixth amendment of the Constitution that the trial must be had in the district where the crime was committed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2138, 2139; Dec. Dig. § 526.*]

4. INTERNAL REVENUE (§ 47*)—WHOLESALE LIQUOR DEALER—SPECIAL TAX—INDICTMENT.

Rev. St. § 3242 (U. S. Comp. St. 1901, p. 2094), makes it an offense for a person to engage in the business of a wholesale liquor dealer without having paid the "special tax" required by law. *Held*, that an indictment charging defendant with engaging in the business of a wholesale dealer in malt liquors without having paid the tax was not demurrable because the tax was not referred to as a "special tax" as in the statute.

·[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 144–150; Dec. Dig. § 47.*]

5. INDICTMENT AND INFORMATION (§ 125*)—OBJECTIONS—DUPLICITY.

An indictment charging defendant in a single count with conspiracy to evade the payment of the internal revenue tax required to be paid by the laws of the United States by persons engaged in the liquor business, in violation of Rev. St. § 3242 (U. S. Comp. St. 1901, p. 2094), and also with conspiring to violate Penal Code, § 239 (Act March 4, 1909, c. 321, 35 Stat. 1136 [U. S. Comp. St. Supp. 1911, p. 1662]), prohibiting C. O. D. shipments of liquor and the collection of the purchase price by carriers, was duplicitous as charging in the same count two distinct offenses for which different penalties are provided.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. § 125.*]

6. INTERNAL REVENUE (§ 47*)—ENGAGING IN BUSINESS WITHOUT PAYING TAX—ACTS OF AGENT—LIABILITY OF PRINCIPAL—EVIDENCE.

In a prosecution of a nonresident brewing corporation for engaging in business as a wholesale dealer in malt liquors in North Dakota without paying·the special internal revenue tax in violation of Rev. St. § 3242

(U. S. Comp. St. 1901, p. 2094), defendant was entitled to show, notwithstanding it was not necessary for the government to establish an unlawful intent on defendant's part, that the acts of its agents in selling liquor in North Dakota were not only without defendant's knowledge and consent, but were in express violation of instructions given them by defendant, and, if the jury found such to be the fact, it constituted a defense.

[Ed. Note.--For other cases, see Internal Revenue, Cent. Dig. §§ 144--150; Dec. Dig. § 47.*]

In Error to the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

The John Gund Brewing Company was indicted for having engaged in the business of a wholesale dealer in malt liquors in Dickinson, Stark county, N. D., without having paid the license imposed by law on such business; with also engaging in the business of a retail dealer in malt liquors without having paid the government license, and with conspiracy to evade the payment of the internal revenue tax required by persons engaged in the sale of malt liquors, and also to violate Penal Code, § 239, making it an offense for any railroad company, express company, or other common carrier or person in connection with the transportation of liquors from one state to another, to collect the purchase price or any part thereof before or after delivery from the consignee or from any other person, or to in any manner act as agent of the buyer or seller of any such liquor for the purpose of buying or selling or completing the sale thereof save only in the actual transportation or delivery of the same. A verdict of guilty was returned on the count charging the engaging in the business of a wholesale dealer without paying the tax, and also on the indictment for conspiracy, and defendant brings error. Reversed on the indictment charging failure to pay the tax as a wholesale dealer, and remanded with instructions to grant a new trial, and reversed and remanded with directions to sustain a demurrer to the indictment charging conspiracy with instructions to dismiss the same.

The grand jury for the district of North Dakota returned two indictments against the plaintiff in error, a corporation existing under the laws of the state of Wisconsin, and having its domicile in that state and no agent in the state of North Dakota. In No. 3,854 the indictment charges the defendant with having engaged in the business of a wholesale dealer in malt liquors at Dickinson, county of Stark, in the state and district of North Dakota, without having paid the tax imposed by law upon such business. There was a second count charging the defendant with a similar offense, except that it was charged with having engaged in the business of a retail dealer in malt liquors; but, as there was a verdict of not guilty on that count, it is unnecessary to consider it further.

In No. 3,855 the indictment charged the defendant and one Hartung in one count with conspiracy to avoid the payment of the internal revenue tax required to be paid by the laws of the United States by persons engaged in the business of dealing in malt liquors, and also to violate the provisions of section 239 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1136 [U. S. Comp. St. Supp. 1911, p. 1662]) of the United States.

The defendant being a nonresident of the district of North Dakota, and having no agent in that district upon whom process could be served, the court below made an order directing the clerk to issue a summons directed to the marshal of the United States for the Western District of Wisconsin,

where the defendant had its domicile, commanding him to summon the defendant to appear before that court on the 5th day of March next to answer an indictment found against said corporation charging it with violating the statutes set forth in the indictments. This writ conformed to the form prescribed by the statutes of North Dakota for serving process in criminal cases on corporations. These writs were duly served by the marshal for the Western District of Wisconsin upon the chief officer of the corporation. Motions to quash the summons, service thereof, and the return thereon were filed by the defendant, and were by the court overruled and exceptions saved.

Thereupon the defendants filed demurrers to each of the indictments, and, they being overruled, entered pleas of not guilty. By stipulation in writing the parties agreed that the two cases should be consolidated and tried together as if they were different counts in the same indictment. A trial to a jury was had and a verdict of guilty returned on the first count in the indictment in No. 3,854, and a verdict of guilty in the conspiracy indictment.

George A. Bangs, of Grand Forks, N. D. (George R. Robbins, of Grand Forks, N. D., on the brief), for plaintiff in error.

Edward Engerud, U. S. Atty., of Fargo, N. D., and Charles E. Littlefield, Sp. Asst. Atty. Gen. (T. H. McEnroe, Asst. U. S. Atty., of Fargo, N. D., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and W. H. MUNGER and TRIEBER, District Judges.

TRIEBER, District Judge (after stating the facts as above). It is earnestly urged that there was no authority for the process issued in this case directed to the marshal of another district, and that the service and return are unauthorized, and that therefore the court erred in overruling the defendant's motion to quash them.

[1] The only statute of the United States relating to the arrest of a person charged with a criminal offense in a district other than that in which the indictment has been returned is found in section 1014, R. S. (U. S. Comp. St. 1901, p. 716), but that clearly cannot apply to a corporation, for a corporation cannot be arrested, cannot be held to bail for its appearance, and no order for its removal to the other district can be made, as the latter can only be made when the defendant is imprisoned. Unless there is some other law providing for the issuance of some writ which will secure the attendance of such a corporation in the court in which the indictment has been returned, foreign corporations, and for that matter all corporations, would be entirely immune from punishment under the statutes of the United States, for there is no statute of the United States which specifically provides for the kind of process necessary to bring a corporation into court to answer an indictment.

[2] But section 716, R. S. (U. S. Comp. St. 1901, p. 580), grants the courts of the United States power to issue all writs not specifically provided for by the statute which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and principles of law. This statute was no doubt enacted by Congress in order to meet cases of this nature when there is no specific process provided by statute. In re Chetwood, 165 U. S. 443, 461, 17 Sup. Ct. 385, 41 L. Ed. 782; United States v. John Kelso Co. (D. C.) 86 Fed. 304; United States v. Standard Oil Co. (D. C.) 154 Fed. 728; United

States v. Virginia-Carolina Chem. Co. (C. C.) 163 Fed. 67; Thompson on Corporations, § 5651.

[3] As the only punishment which can be inflicted upon a corporation is a fine (United States v. Union Supply Co., 215 U. S. 50, 30 Sup. Ct. 15, 54 L. Ed. 87), a criminal proceeding against a corporation is in effect no more than an action for the recovery of a penalty, with this difference, that under the sixth amendment to the Constitution the trial must be had in the district where the crime has been committed. The court committed no error in overruling the motion to quash the process.

[4] The demurrer to the indictment in No. 3,854 charging the defendant with engaging in the business of a wholesale dealer in malt liquors without having paid the tax required by law is based upon the fact that the indictment left out the word "special" before the word "tax," as section 3242, R. S. (U. S. Comp. St. 1901, p. 2094), makes it an offense for a person to engage in that business "without having paid the special tax as required by law." While no doubt it is the better practice in drawing indictments for statutory offenses for the pleader to follow the language of the statute literally or as closely as possible, still, if the omission of a word can in no manner be prejudicial to the defendant by failing to inform him of the crime he is charged with so as to enable him to prepare a proper defense, or prevent him in case of a later indictment for the same offense to plead former jeopardy and in view of the fact that this is the only tax which under the laws of the United States such a dealer is required to pay, the omission is not prejudicial. The strictness with which indictments or informations were at one time construed by the courts, which frequently operated to defeat the ends of justice, no longer prevails, and technical objections not prejudicial are not regarded with as much favor as they were at one time. Breese v. United States, 226 U. S. 1, 33 Sup. Ct. 1, 57 L. Ed. ——. Act June 1, 1872, c. 255, 17 Stat. 198, digested as section 1025 of the Revised Statutes (U. S. Comp. St. 1901, p. 720), is clearly applicable to a plea of this kind. The demurrer was properly overruled.

[5] The demurrer to the conspiracy indictment, No. 3,855, should have been sustained, as the indictment is bad for duplicity. It charges the defendant in one count with a conspiracy to commit two distinct offenses, one "to evade the payment of the internal revenue tax required to be paid by the laws of the United States by persons engaged in such business," and to violate section 239 of the Penal Code. These are two distinct offenses, with different penalties for violations thereof. This has never been permitted. Without citing the many cases on this subject, the following will be found to throw light on that question: State v. Huffman, 136 Mo. 58, 37 S. W. 797; Wood v. State, 47 Tex. Cr. R. 543, 84 S. W. 1058; State v. Dennison, 60 Neb. 192, 82 N. W. 628; State v. Ashpole, 127 Iowa, 680, 104 N. W. 281; State v. Wester, 67 Kan. 810, 74 Pac. 239; State v. Mattison, 13 N. D. 391, 100 N. W. 1091; United States v. Smith (D. C.) 152 Fed. 542, 545.

[6] The government, to sustain its charge in No. 3,854 that the defendant had engaged in the business of a wholesale dealer in malt liquors in the town of Dickinson, Stark county, N. D., introduced evidence tending to show that the defendant had a branch establishment for the sale of malt liquors at Moorhead in the state of Minnesota, which was in charge of a general agent; that it had a large stock of liquors on hand which was constantly replenished to make up the stock according to the sales, which he was authorized to make; that a person by the name of Lally, who resided at Dickinson, N. D., would send orders to the defendant's agent at Moorhead, Minn., for malt liquors with directions to send them with bill of lading to shipper's order with draft for the purchase price attached, which bills of lading were to be turned over upon payment of the draft and thus enable Lally to secure the liquors; that the drafts would be drawn on fictitious persons and would be taken up by Lally, and the bills of lading indorsed in blank would enable Lally or any person to whom he delivered them to obtain the liquors from the carrier. There was evidence tending to show that the agent of the defendant at Moorhead knew that these drafts were drawn on fictitious persons; his dealings being solely with Lally. The defendant introduced in evidence a circular letter which it had sent to all of its agents, including the agent at Moorhead, directing them to place marks on the outside of all packages containing liquors, showing the name of the consignee, the nature of the contents and the quantity contained therein; that shipments could be made subject to either "straight" or "order" bills of lading, but when "straight" bills of lading were issued the agents of the carriers are prohibited from stamping or indorsing waybills to the effect that shipments will be delivered only on surrender of bills of lading. The circular also contained the following instructions:

"We expect you to live up to these instructions strictly. Under no consideration are you to make shipments except on bona fide orders only. The package and shipping receipt or bill of lading covering must also show name of the bona fide consignee. Any one violating any of these instructions will be held accountable."

There was also introduced by the defendant another circular sent to its agents, including the agent at Moorhead, which circular was dated October 21, 1909, inclosing a copy of section 238 of the Penal Code prohibiting C. O. D. shipments, stating that every package must be labeled so as to plainly show the name of the consignee, and, if an agent makes shipments to any fictitious consignee, he will be subject to a fine of $5,000. It then proceeds:

"Beginning November 1st agents will label all packages showing the nature of the contents and the quantity contained therein, but must look to you to affix the name of the bona fide consignee on every package that is shipped after January 1st. Please familiarize yourself with every requirement under this statute and govern yourself accordingly."

During the trial the defendant offered to prove by its general manager that it had no notice or knowledge of any violation of the instructions contained in those circulars and that it had no knowledge or notice in any way, shape, manner, or form of any sales of beer

at Dickinson, by its Moorhead agent, which was excluded by the court and exceptions saved. The court gave the following instruction to the jury, to which an exception was saved by the defendant:

"The evidence shows that the company had a branch station at Moorhead in the charge of a general agent there for the sale of liquors. It had a large stock of liquors on hand which was constantly replenished to make up the stock according to the sales, and that he was authorized to sell the liquors. Now I charge you that the company is responsible for his acts, within the scope of that agency, and, although it gave directions not to sell in certain ways in violation of the federal C. O. D. law, still, if he did make sales that were in violation of that law, those sales would be within the general scope of his agency, and he would be responsible and the company would be responsible for his acts in that respect. *As to the transaction here involved, I charge you, as a matter of law, that the company is responsible for the acts of its agent at Moorhead in the transactions that are disclosed to you by the evidence.*"

There is an irreconcilable conflict among the authorities on the question whether a principal can be held liable criminally for the acts of his agent, acting within the scope of his apparent authority, but against the positive instructions of the principal, and of which violation the principal had no knowledge nor consented thereto. A large number of cases on this subject are collected in the notes in the L. R. A. Reports to the following cases: Williams v. Hendricks, 115 Ala. 277, 22 South. 439, 41 L. R. A. 650, 67 Am. St. Rep. 32; State v. Gilmore, 80 Vt. 514, 68 Atl. 658, 16 L. R. A. (N. S.) 786, 13 Ann. Cas. 321; and State v. Nichols, 67 W. Va. 659, 69 S. E. 304, 33 L. R. A. (N. S.) 419, 21 Ann. Cas. 184.

We are of the opinion that while, in the absence of any explanatory evidence on the part of the defendant, the principal will be liable in a case of this nature where it is unnecessary to establish an unlawful intent on the part of the defendant for the acts of his agent within the apparent scope of his authority, the defendant may show that the agent acted not only without his knowledge and consent, either express or implied, but in direct violation of express instructions given to him by the principal. Whether such instructions were given to him by the principal in good faith or whether by reason of the number of such illegal transactions by the agent, or the length of time he continued to disobey them and violate the law the principal must have had knowledge of the agent's unlawful acts and closed his eyes to them, are questions of fact which should be submitted to the jury under proper instructions. Commonwealth v. Hayes, 145 Mass. 289, 14 N. E. 151; Kinnebrew v. State, 80 Ga. 232, 5 S. E. 56; State v. Wentworth, 65 Me. 234, 20 Am. Rep. 688.

The authorities cited by counsel for the government in which corporations have been held liable in civil actions for torts committed by its agents in violation of their instructions, but within the scope of their apparent authority, are inapplicable to criminal proceedings. Nor is New York, etc., R. R. Co. v. United States, 212 U. S. 481, 29 Sup. Ct. 304, 53 L. Ed. 613, in point. That was a proceeding for violation of the Elkins Act (Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847

[U. S. Comp. St. Supp. 1911, p. 1309]), which among other things provides:

"That anything done or omitted to be done by a corporation common carrier, subject to the act to regulate commerce and the acts amendatory thereof which, if done or omitted to be done by any director or officer thereof, or any receiver, trustee, lessee, agent, or person acting for or employed by such corporation, would constitute a misdemeanor under said acts or under this act shall also be held to be a misdemeanor committed by such corporation, and upon conviction thereof it shall be subject to like penalties as are prescribed in said acts or by this act with reference to such persons except as such penalties are herein charged."

"In construing and enforcing the provisions of this section the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier * * * shall in every case be also deemed to be the act, omission or failure of such carrier as well as that of the person."

That statute, therefore, in express terms creates the liability of the principal, and to that extent changes the existing rules of law governing such cases. The statute is, in effect, a recognition by Congress that the law is as stated by us in this opinion, and in order to make the penal provisions of the Interstate Commerce Acts effective against the corporation itself enacted this provision.

The court below erred in refusing to admit the evidence offered by the defendant to establish that defense, and also erred in peremptorily instructing the jury as a matter of law that the defendant was responsible for the acts of its agent at Moorhead in the transactions that were disclosed by the evidence.

Let the judgment in No. 3,854 be reversed and the case remanded to the court below, with directions to grant a new trial. Let the judgment in No. 3,855 be reversed, with directions to the court below to sustain the demurrer, discharge the defendant, and dismiss the case.