It seems to me, under all the circumstances, I cannot do otherwise than to discharge this indictment.

The defendant is entitled to have his case investigated, upon legal evidence and no other. The People may present the case to another grand jury, being careful to use only legal evidence, and then the determination of the grand jury will be binding upon everyone. If another indictment is found the defendant will have to stand his trial. If he is not indicted, he will be entitled to a discharge from custody.

An order will, therefore, be prepared and presented for signature, discharging the indictment, on the ground that other than legal evidence was received and considered by the grand jury, and directing that the case be resubmitted to the grand jury now sitting, or to the next grand jury that shall sit, in the county of New York.

Ordered accordingly.

---

## Court of Appeals—New York.

April 18, 1899.

## PEOPLE v. EDWARD B. COOMBS.

1. INDICTMENT—FRAUDULENT CLAIM.

An indictment, under § 672 of the Penal Code which alleges the presentation of the claim, the fact that it was false and fraudulent, and known to be so by the defendant when he presented it, that various of the items contained in the bill for which the defendant charged were entirely fictitious to the knowledge of the defendant, contains a full statement of all the facts necessary to constitute the offense.

2. FRAUDULENT CLAIM—PROOF.

In such case, it is, of course, incumbent upon the prosecution to show,

to the satisfaction of the jury, that the defendant knowingly presented; or caused to be presented, a false and fraudulent bill for audit to an officer authorized by law to audit and allow the same.

3. CORONER—INQUEST.

In order to constitute an inquest within the meaning of the law, a jury need not be impaneled; a mere inquiry by the coroner himself, or any one acting under his authority, with reference to the cause of death, constitutes an inquest within the scope and meaning of the statute and the resolution of the board of supervisors prescribing the fees or compensation of coroners. ·

4. SAME.

A coroner's inquest means a judicial investigation into the cause of death by a coroner, with the aid of a jury, and hence the fee for an inquest could not properly be charged unless a jury had been impaneled to determine the cause of death.

5. SAME—FALSE INQUEST PAPERS.

False and fictitious inquest papers, made up by a coroner's clerk and retained in the defendant's public office for the purpose of being filed with the county clerk at some future time, are not private papers of the coroner but public records. Their production under a subpœna to their custodian in the coroner's office, calling for public documents, is not a violation of the defendant's constitutional rights.

6. FRAUDULENT CLAIM—PROOF.          · .

Where the fraudulent bill described in the indictment was presented to the auditor by the defendant's clerk, and it could not be shown that he personally presented the bill, it is competent to show that he had received the proceeds.

7. APPEAL—HARMLESS ERROR.

When technically inadmissible evidence, admitted on a criminal trial, apparently did not affect the case or prejudice the defendant, the error is to be disregarded on appeal.

APPEAL from judgment convicting defendant of defrauding the city by fictitious claims for fees for services as coroner.

Joseph A. Burr, for appellant. ·

Hiram R. Steele, District Attorney, for the People.

O'BRIEN, J.—In the year 1897 the defendant, Coombs, and one George H. Nason were the coroners of the county of Kings ; having been elected at the general election held two years previously. They were jointly indicted for a felony, under section 672 of the Penal Code. The charge in the indictment is

that they knowingly, with intent to defraud the city of Brooklyn, presented, for audit and allowance, to the auditor charged with the duty of auditing accounts and claims against the city, a false and fraudulent bill, containing false and fraudulent items claimed to be due them for official services. In this bill they made a claim against the city for fees in 325 inquests held in the month of July, 1897. There were attached to the bill two lists of names of persons upon whose bodies the inquests purported to have been held; naming the day when, and place where, held. One of these lists purported to be the inquests held by the defendant Coombs, 162 in number, and the other to be those held by Nason, 163 in number. The fees allowed to a coroner in the county of Kings were fixed by a resolution of the board of supervisors in 1881 at $8.50 for each inquest, including all charges and expenses. The bill was audited and paid. The defendant Coombs elected to be tried separately, and was convicted. The judgment entered against him on the verdict has been affirmed at the appellate division. The principal questions in the case were questions of fact. It was, of course, incumbent upon the prosecution to show, to the satisfaction of jury, that the defendant knowingly presented, or caused to be presented, a false and fraudulent bill, for audit, to an officer authorized by law to audit and allow the same. The evidence to sustain the charge in this respect was simply overwhelming. It was shown that the defendant signed and swore to the bill, and certified to the list of items attached thereto; that he filed with the health department of the city certificates of death corresponding to each of the alleged inquests appearing in the bill; and it was shown that at least 49 of these inquests were fictitious and fraudulent. It is quite unnecessary to go into the details of the proof produced at the trial to establish the charge. It has been very carefully and fairly analyzed and presented in the opinion of the learned court below, and we can add nothing to the force of the argument that follows from the statement of facts there found. It is but fair to say that no claim is made in this court by the learned counsel for the defendant that the proof produced at the trial upon the issues of fact was not entirely sufficient to justify the verdict of the jury. The

argument in support of the appeal is devoted entirely to errors of law which it is claimed appear upon the face of the record, and which operated to the prejudice of the defendant at the trial. These questions have also been carefully examined in the court below, and they require very little discussion now.

It is urged in the first place that the indictment is defective in that it charges a crime committed by the two defendants jointly, but fails to state the negative fact that the items contained in the bill were false or fraudulent. The indictment does charge specifically that the several so-called inquests for which the defendant has made charges in the bill, or at least 49 of them, were never held. But the contention of the learned counsel for the defendant seems to be that it was also necessary to allege that these 49 inquests were not held by his co-defendant. We think that the indictment contains a full statement of all the facts necessary to constitute the offense. It alleges the presentation of the bill, and the fact that it was false and fraudulent and known to be so by the defendant when he presented it. It alleges that various of the items contained in the bill for which the defendant charged were entirely fictitious, to the knowledge of the defendant. This was all that was necessary, under the provisions of the Code, which now prescribes the form and substance of the indictment.

There was some controversy at the trial with respect to the true meaning and character of an inquest by a coroner in cases of death. It was contended by the learned counsel for the defendant that it is not necessary, in order to constitute an inquest, within the meaning of the law, that a jury should be impaneled; that a mere inquiry by the coroner himself, or any one acting under his authority, with reference to the cause of death, constitutes an inquest, within the scope and meaning of the statute and the resolution of the board of supervisors prescribing the fees or compensation of coroners. We think the learned trial judge disposed of that question correctly. A coroner's inquest has always meant, and still means, a judicial investigation into the cause of death by a coroner, with the aid of a jury; and hence the fee for an inquest could not properly be charged unless a jury had been impaneled to determine the cause of

death.   But the controversy concerning the nature and meaning of a coroner's inquest was really eliminated from the case by the charge of the learned trial judge, since he instructed the jury that if the defendant presented the bill for audit, believing that he had a right to make the charges therein specified, and acting honestly, there could be no conviction, even though, in law, the charges were unauthorized.   This obviously gave to the defendant the benefit of the contention now made in his behalf concerning the fees allowed by law to coroners in cases of inquests.   He virtually told the jury that, even though the defendant had charged for inquests where no jury had been summoned or attended, yet if he acted honestly, and believed he had a right, under the statute, to charge the fee after a mere personal inquiry, the defendant could not be convicted.   Surely this was as favorable a view of the law on this subject as the defendant could ask.

It is urged that the constitutional right of the defendant to be exempt from unreasonable search or seizure of his person or papers was violated at the trial.   It appears that the defendant's office was in the court house in Brooklyn ; that he had one or more clerks to assist him in the performance of his duties; that one of these clerks prepared a series of false and fictitious papers, designed to show that, in each case where a charge was made for an inquest on the bill in question, an inquest with a jury had actually been held.   These false vouchers were made out with regard to every necessary detail.   On their face it appeared that, in every case where a charge for fees had been made in the bill, a jury had been impaneled, witnesses sworn, and a verdict rendered, and certified by the defendant.   They were, in form, a compliance with the statute which requires that in every case of a coroner's inquest the record of the proceeding and the verdict shall be made up and filed with county clerk. These false papers had, of course, never been filed, but were retained in the defendant's office, as the evidence tended to show, for the purpose of filing at some future time.   They were still in the office more than a month after the false and fraudulent bill in question had been presented and audited.   The district attorney subpœnaed the clerk to produce the inquests held

during the month of July, 1897, the period covered by the indict-
ment; and in response to this subpœna they were all produced
by the clerk, and in this way came into the possession of
the district attorney. They were produced at the trial, offered
in evidence, and received, under objection and exception. The
contention of the learned counsel for the defendant is, that these
were the defendant's private papers, and that their production
at the trial by the people, under the circumstances stated, was
in substance, a violation of the defendant's constitutional rights.
We think there was no search, no seizure, or a violation of any
right secured to the defendant by the constitution or by law.
The papers were in a public office, in the custody of a clerk who
was paid by the city. On their face, they were public records,
and intended to be used as such. The district attorney could
not know, when he required their production under the subpœna,
that they were false or fictitious; and, even if he did, it cannot.
be said that a public officer is privileged to retain in a public
office a fraudulent record made for the purpose of concealing a
fraudulent claim for fees. The subpœna did not call for any
private papers; only for public documents. The papers in
question were produced in that character and, had they been
genuine, would have constituted evidence in favor of the de-
fendant. The defendant was not in this way compelled to give
evidence against himself, within the meaning of the constitutional
provision on that subject. A party on trial for making or
uttering counterfeit money may always be confronted at the trial
with the work of his own hands, and it has never, so far as I can
learn, been supposed that this would be a violation of the con-
stitutional right exempting a citizen from unreasonable search
or seizure, or that it was compelling him to be a witness against
himself.

It appears that the bill in question, when audited, was pre-
sented to the comptroller, who drew a warrant upon the treas-
urer for its payment. The treasurer paid it by a check upon a
bank in which public funds had been deposited. The check
was paid, and the proceeds credited in equal sums to the de-
fendants, and the defendant drew checks against this deposit.
On the trial the district attorney produced and put in evidence

the books of the bank containing the defendant's account, and showing a small balance in his favor after these transactions. The books were received under objection and exception from the defendant's counsel. The learned court below concedes that this piece of testimony was technically inadmissible, and we will assume that it was. It is difficult, however, to see what effect it could have had upon the case, one way or the other. The fraudulent bill described in the indictment was presented · to the auditor by the defendant's clerk, and since it could not be shown that he personally presented the bill, it was competent to show that he had received the proceeds. But that fact was sufficiently established by the proof which showed the audit, the warrant of the comptroller upon the treasurer for the payment, the check of the · treasurer upon the bank to the joint order of the two defendants, the payment of that check, and the deposit of the proceeds to their credit. The books of the bank could have added nothing to the force or effect of this proof, and it is impossible to conceive how the defendant could have been prejudiced by the evidence. The ruling, therefore, whether right or wrong, comes fairly within the provisions of section 542 of the Code of Criminal Procedure, which requires us to disregard technical errors or defects, or exceptions which do not affect the substantial rights of the parties. We think the case was correctly disposed of in the court below, and that the judgment must be affirmed.

BARTLETT, J. (dissenting). I think this judgment should be reversed for legal error.

1. The ledger of the trust company was improperly admitted in evidence.

2. No legal audit of the bill was shown. The learned district attorney admitted in open court that, in the absence of Maas, he was compelled to prove payment to charge defend- . ant

3. Papers, alleged to be records of inquisitions held by the defendant, which were drawn nearly a month after the claim is charged to have been presented, and which were never filed in the county clerk's office, but remained in defendant's private

custody, were taken from his possession by subpœna duces tecum. These declarations were no part of the res gestæ. They did not exist until long after the crime charged is alleged to have been consummated. They were incompetent evidence, and obtained in violation of defendant's rights, as secured by the constitution of the United States (Amend. art. 4) and the bill of rights of this state (2 Rev. St. [Banks' 9th Ed.] p. 1650, § 11).

The people, in trying a defendant, undertake, not only to establish his guilt, but to do so under the forms of law.

All concur with O'BRIEN, J., for affirmance, except BART-LETT, J., who files dissenting memorandum, and MARTIN, J., who dissents generally.

Judgment of conviction affirmed.