Edson L. Thompson, Appellant, *v.* Ernest W. Hof-
statter, Respondent.

(Argued June 4, 1934; decided July 3, 1934.)

*Irving G. Kennedy* and *John S. Sickels* for appellant.

56

*Monroe J. Cahn* and *Humphrey J. Lynch* for respondent.

CRANE, J. The County Law (Cons. Laws, ch. 11), article 12, section 210, applies solely to the appointment, term of office and duties of County Attorneys. It reads: " The board of supervisors in any county may appoint a county attorney who shall be removable at its pleasure. The term of office of a county attorney so appointed shall be two years, unless sooner removed, and his salary shall be fixed by the board of supervisors and be a county charge. The board of supervisors may, by local law, prescribe the duties of the county attorney, which duties may include the services to town boards and town officials when not in conflict with the interests of the county."

This section was amended (Laws of 1918, ch. 573; Laws of 1931, ch. 485; Laws of 1932, ch. 529), and now reads as follows:

" § 210. Appointment, term of office and duties of county attorneys. The board of supervisors in any county may appoint a county attorney to act during the term of office for which the then members of such board

were elected, provided, however, that such attorney shall continue in office thereafter until his successor has been appointed, or, until he has been notified, by the succeeding board, that his employment is discontinued. His salary shall be fixed by the board of supervisors and be a county charge. A county attorney may be removed by the appointing board for inefficiency, neglect of duty or misconduct in office, but only after notice and an opportunity to be heard. The board of supervisors may, by local law, prescribe the duties of the county attorney, which duties may include the services to town boards and town officials when not in conflict with the interests of the county."

The County Attorney appointed in pursuance to this section becomes a public official. He is not a mere employee. The statute refers to his position as an " office " and provides for the appointment to a definite term with a salary to be fixed by the appointing power. *Fisher* v. *City of Mechanicville* (225 N. Y. 210) is not an authority to the contrary. There the attorney made a contract with the village to render legal services for a period of one year for the sum of $750. The act incorporating the village of Mechanicville (Laws of 1891, ch. 106, as amd.) gave the Board of Trustees power " to appoint annually an attorney and pay such attorney a reasonable annual salary." The trustees made the contract and this court held that the attorney was an employee, not a public official. The Village Act gave a list of the officials, not mentioning the attorney. The difference between this village act and the County Law is apparent. Not only is a separate article devoted to the subject of County Attorneys, which somewhat emphasizes their importance, but the section, as already stated, refers to the appointment of the County Attorney as a " term of office " with a salary attached which is to be fixed by the board. (*Lancaster County* v. *Fulton*, 128 Penn. St. 48; 22 Ruling Case Law, pp. 380, 381.) *Matter of Dawson* v. *Knox*

(231 App. Div. 490), holding the County Attorney of Albany county an employee and not an officer, one justice dissenting, does not meet with our approval.

A public officer is hedged about with certain very definite restrictions to be found in the Constitution, the Public Officers Law (Cons. Laws, ch. 47) and the County Law as it applies to county officials. In article III, section 28, of the Constitution of the State we have this provision: " The Legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor."

The Public Officers Law (§ 67, subd. 2) reads: " An officer or other person, to whom a fee or other compensation is allowed by law, for any service, shall not charge or receive a greater fee or reward, for that service, than is so allowed."

The County Law, in specifying the duties and powers of Boards of Supervisors, in subdivision 5 of section 12, gives to the Board the power to fix the amount and the time of payment of the salary of any county officer or employee, and in the last sentence of the subdivision enacts as follows: " The salary or compensation of an officer or employee elected or appointed for a definite term shall not be increased or diminished during such term."

On the 17th day of May, 1915, Ernest W. Hofstatter, the defendant, was appointed County Attorney of the county of Rockland at a fixed salary of $1,500 per annum. In 1917 the salary was raised to $2,000, in 1921 to $2,400, and in 1926 to $2,800. These raises in compensation — as the defendant was reappointed at the expiration of every succeeding two years — were due to the increased work coming to the defendant because of county litigation and the increased activity in road building necessitating the condemnation or purchase of property. It was recognized by the Board of Supervisors that the

defendant's time would be almost entirely occupied with county matters. The resolution increasing the salary reads as follows: " Whereas the work of the county attorney has greatly increased and requires practically his entire attention, be it resolved that the salary of the county attorney be and is hereby fixed at $2,000 per annum for the coming year commencing June 1, 1916."

The respondent was an attorney practicing law in Rockland county, having at times an office in New York city. The defendant in his own behalf testified that he was carrying on his own private practice, which was more or less substantial, before entering into the work as County Attorney. He also says: " I went to the Board and told them that I thought a salary of $1,500 was entirely inadequate, and more work was coming into the County Attorney's office and being referred to the County Attorney, and requested them to make some increase."

The Board of Supervisors never prescribed the duties of the County Attorney by any local law, so that we must assume that all the law work of the county, such as is customary for a lawyer to handle, was to be performed by the defendant for the fixed salary. True, Mr. Hofstatter testified: " At the time of the appointment the duties were designated as attending meetings, rendering opinions to the board, and at that time also opinions to the town boards and town officials; defending all county officials in their capacity and work; that is all that I recall at the present time." Who did the designating and how it was done is not stated. Even the witness cannot remember whether this statement included all his duties. Oral directions or understandings or talk by supervisors with the attorney do not constitute prescribing the duties by local law.

In 1920 the defendant received $140.80 for the collection of taxes by supplementary proceedings against delinquent taxpayers. This was by resolution of the Board in 1917,

reading as follows: " Resolved that the county attorney be allowed five per cent on any and all taxes collected from persons or property appearing on the delinquent list, prepared by the County Treasurer." This was clearly extra compensation. The work was attorney work covered by the salary. Extra compensation of $584.74 in 1923 was paid for collecting $5,840 from the State of New York. This too was the ordinary legal services usually performed by an attorney. And the same is true regarding the fee of $750 paid in 1927 for litigation against the Knickerbocker Ice Company in the United States District Court. In 1927 and 1929 the Board passed the following resolution, August 2, 1927: " Resolved that the Board proceed with the appointment of a County Attorney for a term of two years dating from August 16th, 1927, at the annual salary of twenty-eight hundred dollars ($2,800.00), and dating from the 1st of January, 1928, five hundred ($500.00) Dollars additional for attending sessions of the Legislature and hearings of the Tax Department when necessary to properly serve the interest of the County and that for litigated matters and acquiring rights of way for State and County Highways, such additional compensation as may be allowed by the Board." The resolution of August 5, 1929, is to the same effect.

Thereafter, the defendant as County Attorney was paid for acquiring approximately five hundred parcels of land for rights-of-way in the State and county, searching title to such parcels and general supervision of State and county highways the sum of $9,450 between the years 1923 and 1929. Twenty-five hundred dollars of this amount was received before the passage of these resolutions.

The question is squarely presented whether a County Attorney can thus be paid additional compensation over and above his salary for ordinary legal attorney work because the salary fixed is not an adequate compensation.

The Board of Supervisors, by section 210 of the County Law, had the power to prescribe the duties of the County Attorney by a local law. Had they done this, he or any other lawyer could have been employed by the county, at fair compensation, to look after exceptional matters not included within the duties prescribed. Even this power has its limitations, for the prescribing of the duties by a local law may not be used as a subterfuge for paying additional compensation over and above a salary. In this case, however, the supervisors never prescribed or limited by any local law — which means a resolution put in the minutes —the duties of County Attorney. These resolutions of 1927 and 1929 failed to prescribe the duties that the attorney was to perform for his salary. We find in the minutes and resolutions and in the testimony that the salary was increased as heretofore stated because of the increase in work which took nearly all of the lawyer's time. Two of the Supervisors called as witnesses gave an explanation for these resolutions. James J. Brown testified: " We did not want to give him a higher figure of salary, but pay him as the extra work came along. We did not want to fix any amount of salary higher than the amount of salary; there might be lean years where he would be getting extra compensation." And Supervisor Garner, as a witness, said: " It was always understood he was to be paid extra compensation for the amount of work he did in highway matters." The defendant himself testified: " Yes, the question of the amount of the salary being sufficient to pay for the services which the county attorney was called upon to do was discussed, and it was determined, or at least it was said by all of the members of the Board that as the legal matters of the county were such that they could not contemplate what would have to be done in each year, both as to highways and other matters coming up which could not be foreseen, that they would prefer and that they would make the salary a reasonably

small salary and pay additional compensation for such matters as came to the attention of the Board and were referred to the County Attorney, including all litigated matters and more particularly highway work." In the early years as County Attorney the defendant had done highway work for his salary.

The county of Rockland was not obliged to appoint a County Attorney, but, when it did appoint Mr. Hofstatter, he became a public official whose salary, as fixed by the Board of Supervisors, covered the usual, ordinary attorney work done for a county, unless it was so special and extraordinary as to be taken out of the duties prescribed by the Board of Supervisors in their local law for which the salary was to be paid. That Mr. Hofstatter performed very valuable legal services which were worth all the extra compensation he received is not questioned, yet the provisions of the Constitution and of the County Law are quite clear and must be obeyed.

Previous decisions in this court have given this warning to county officials. In fact it has been said, if there be any doubt as to the legality of any payment, the doubt must be resolved in favor of the public. We do not have to go so far in this case because in our judgment there is no doubt of the illegality of these additional payments.

The salary of Mr. Hofstatter was fixed for the law work to be performed by him for the county. It was increased with increasing business and was by no means "nominal." So far as the minutes and resolutions of the Board of Supervisors of Rockland county show, and so far as we have any official action from them, the duties of County Attorney included supplementary proceedings, the collection of money when due to the county, the purchasing of property for roads or the handling of condemnation proceedings and ordinary litigation. For this work, which is the ordinary legal work of an attorney, the defendant was paid a salary. The additional compensation for this class of work paid to the

defendant prior to 1927 cannot be justified. The resolutions of 1927 and 1929 authorizing the defendant to charge extra for such services to be performed in the future were likewise illegal. His salary was to be paid him for all legal services, or at least the services usually rendered by an attorney, and this is the position we must take in the absence of any resolution or local law prescribing the duties of the County Attorney. These resolutions, therefore, were merely an attempt to add to the salary extra and additional compensation.

We have not overlooked many of the equities in the defendant's favor: the work performed by him, the reasonableness of his charge and the informal methods or inducements leading up to and the receipt of compensation. But we have nothing to do with equities and informalities. The public have a right to be heard on these matters. They too have claims to be considered and these are found in the plain provisions of the Constitution and the laws to which we have called attention and which prohibit the public officer from accepting or receiving additional compensation, even though the work for which he is paid by a salary becomes unexpectedly onerous. The Board of Supervisors, by the Constitution, is likewise forbidden to grant any extra compensation to a public officer.

It is said that these resolutions of 1927 and 1929 spoke for the future and were not extra compensation for work done in the past. This is true, but is not the point. The fact is that the salary of $2,800 was given the defendant for legal services as County Attorney and, in the absence of any local law defining those services, was to include all the duties heretofore mentioned. The Board of Supervisors, in fixing the salary which paid for these services, could not say that he would also in future get additional compensation according to their discretion and judgment. This power has been taken away from them. The salary of a public official cannot

be left in this indefinite and uncertain way. When we pause to think of the effect of such power we see at once that the constitutional limitations and the provisions of the Public Officers Law and the County Law could be easily nullified. A salary could be given for indefinite legal services and then extra compensation without limitation allowed for the ordinary work of such an official by simply saying in advance that it was to be done. The law does not permit any 'such evasion; the fixing of a salary would have no meaning.

As before stated, the courts have heretofore spoken upon these matters and what we have here written is simply a reiteration of that law which has been settled and determined in other cases. (*People* v. *Sutherland*, 207 N. Y. 22; *Wadsworth* v. *Bd. of Supervisors*, 217 N. Y. 484; *Stetler* v. *McFarlane*, 230 N. Y. 400; *Cowan* v. *Mayor*, 3 Hun, 632; *People ex rel. Williams* v. *County Court*, 105 App. Div. 1; *People* v. *Neff*, 121 App. Div. 44; *Matter of Goldstein* v. *Berry*, 232 App. Div. 583, 585.) The whole matter has been well summed up by Judge Dillon in his work on Municipal Corporations (Vol. 1 [5th ed.], § 426), as follows: "Extra Compensation.— It is a well-settled rule that a person accepting a public office, with a fixed salary, is bound to perform the duties of the office for the salary. He *cannot legally claim additional compensation* for the discharge of these duties, even though the salary may be a very inadequate remuneration for the services. Nor does it alter the case that by subsequent statutes or ordinances his duties within the scope *of the charter powers* pertaining *to the office* are increased and not his salary. Whenever he considers the compensation inadequate, he is at liberty to resign. The rule is of importance to the public. To allow changes and additions in the duties properly belonging or which may properly be attached to an office to lay the foundation for extra compensation, would introduce intolerable mischief. The rule, too, should be rigidly enforced."

66

(See, also, *Worth* v. *City of Brooklyn,* 34 App. Div. 223; *James* v. *Duffy,* 140 Ky. 604; *County of Humboldt* v. *Stern,* 136 Cal. 63; *State ex rel. Younger* v. *Clausen,* 111 Wash. 241; *Kearney* v. *Bd. of State Auditors,* 189 Mich. 666; *Tracy* v. *Jackson County,* 115 Iowa, 254; *Evans* v. *City of Trenton,* 24 N. J. L. 764; *Moore* v. *Nation,* 80 Kan. 672; *Donahey* v. *State ex rel. Marshall,* 101 Ohio St. 473; *Bd. of County Commrs. of Creek County* v. *Bruce,* 51 Okla. 541.)

The defendant also has received from the Board of Supervisors of Rockland county quite a sum of money for his expenses, and this has been challenged in this action, brought by a taxpayer to recover back from the defendant sums which he had no right to receive. The Public Officers Law (Cons. Laws, ch. 47, § 64) says: " Payment of expenses of public officers. Every public officer who is not allowed any compensation for his services shall be paid his actual expenses necessarily incurred in the discharge of his official duties."

The County Law (Cons. Laws, ch. 11, § 240), touching expenses, reads:

" § 240. County charges.— The following are county charges: * * *

" 3. The compensation of the county officers, their subordinates and assistants, which are payable by the county; * * *.

" 9. The moneys necessarily expended by any county officer in executing the duties of his office in cases in which no specific compensation for such services is provided by law * * *."

Where the County Attorney, paid a salary for his legal services, is at the same time carrying on his own private practice in his own law office, there are at least certain expenses and disbursements which he may justifiably charge to the county. The county is his client and we think the reasonable interpretation of these expense provisions of the law entitle the County Attorney to charge

all the disbursements reasonably incurred in connection with the particular case or piece of business he is handling in the same way that an attorney for any other client might do. Ir this particular the appellant's position is unreasonable. We cannot imagine that the Legislature intended that an official, obliged to make disbursements and incur expenses for the county, must take these out of his salary. Whatever necessary and reasonable disbursements this defendant made in behalf of the county in connection with the handling of litigation or the conduct of the condemnation proceedings or any other matter, the county should and must repay.

However, the bills submitted to the county went way beyond any such items of expense or disbursements. They included a law library for his office. According to the statement submitted by the defendant's Exhibit F, he had spent in ten years $1,611 for law books, which included in the year 1928 one item of $448.50. He charged up one-half of his office rent, the employment of his stenographer at thirty or thirty-five dollars a week, and a law clerk employed in his office at a salary. He also included traveling expenses, part of which was perfectly proper, such as carfare to Albany and back; but I find no justification in the law for charging mileage in traveling around in his automobile at fifteen cents a mile. (*People ex rel. Hewitt* v. *Hoyland,* 145 App. Div. 11.) Supervisor Brown testified: " I think we used to allow Mr. Hofstatter eighteen or fifteen cents a mile for traveling expenses." The trial justice found " that in the proper prosecution of his work it would be necessary for the defendant to travel to distant points frequently, particularly to the City of Albany, to visit and confer with other officials and county attorneys on important legislation then pending; and that he would have to expend considerable money for traveling expenses and for the reasonable entertainment of attorneys and officials with

whom he was constantly in conference." Entertainment of lawyers is not a public expense.

The audit by the Supervisors of these bills during the period of ten years is not a bar to the plaintiff in this case to an inquiry into their legality. On their face many of them were not proper charges. The audit by the Board of Supervisors is not binding merely because it includes some legal items as well as illegal. The latter enable the audit to be attacked and the good separated from the bad. (*People* v. *Sutherland, supra.*) (See, also, *People ex rel. Smith* v. *Clarke*, 174 N. Y. 259, 263.)

Mr. Hofstatter, we are confident, believed his actions to be legal, especially as he was told to make the charges and incur the expense by members of the Board of Supervisors, but the Supervisors themselves were limited in the things they could pay out of the public treasury. While the Supervisors could have purchased, leased or otherwise acquired necessary real property for a county building or for the County Attorney (County Law, § 12, subd. 13), we do not think that this provision justifies the payment of the attorney's office rent or any portion of it.

As there must be a new trial of this case, we shall not attempt to segregate the items of expense, because they are not sufficiently and definitely stated in the evidence. We shall follow the practice outlined in *People* v. *Sutherland* (207 N. Y. 22), and state generally the principles to be applied upon a rehearing of this case: *First*, the moneys received by the defendant for legal services as County Attorney over and above his salary as fixed by the Board of Supervisors was extra compensation, forbidden by the law, and must be returned to the county; *second*, the defendant is entitled to all the disbursements he made for the county in its legal matters, and these include such disbursements as a lawyer ordinarily would charge a client who had retained him at a yearly salary to do his legal work. This we think is reasonable and

fair; beyond this, an amount paid becomes in reality extra compensation. If we may be more specific, we would say that disbursements would include telephone calls, postage, stationery required specially for the county, actual disbursements for traveling expenses, and we may even go so far as to say that a clerk employed entirely upon the county work, devoting his whole time to it, and employed with the approval of the Board, would be such an item as might be charged to a private client, and could thus be charged to the county. Law books, office rent, and a proportion of the salary of law clerks and stenographers employed in the law office would not be proper charges.

In the change from the fee system to the salary, from the attorney employed by piece work to one employed as a public official, there are some times misunderstandings, honest misunderstandings, regarding the nature and duties of the work and the proper charges to be made. Statutes are not interpreted or understood until at a later date some court is obliged to lay down the law. Things move with more or less informality in certain communities, and the books are not always searched to ascertain the limitations of power; friend trusts to friend and custom and habit are stronger than acts of the Legislature. Yet when the question does arise, as to what may be done under the Constitution and the laws of this State, we must brush all these things aside and speak with an authority which looks to the welfare of the future as well as to the hardships of the past, and follow the clear directions of the constitutional and legislative injunctions binding upon courts as well as upon others.

The judgments below should be reversed and a new trial granted, with costs to appellant in all courts.

POUND, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Judgments reversed, etc.