JOHN V. SCHAEFER, Respondent, v. CITY OF LONG BEACH, Appellant.

(Argued March 11, 1936; decided April 28, 1936.)

*David B. Tolins, Corporation Counsel* (*M. Carl Levine* of counsel), for appellant.

*Sidney Newborg* and *David Cohen* for respondent.

Hubbs, J. The charter of the city of Long Beach (Laws of 1922, ch. 635) provides for the appointment of a City Engineer by the Mayor. His term of office is to be fixed by the City Council. The charter provides that the City Engineer is a city officer and he is required to take the constitutional oath of office. His duties are prescribed by the charter which also provides that " he shall receive such compensation for services rendered as may be approved by the council." (§ 24.) The City Engineer is an officer and not an employee of the city. (*Thompson* v. *Hofstatter*, 265 N. Y. 54.)

The respondent was duly appointed City Engineer and the City Council fixed his salary or compensation by a resolution which reads:

" *Resolved* that the compensation to be paid to the City Engineer of the City of Long Beach,

" 1. Shall be at the rate of 5% of the total cost of the various improvements or work supervised by him, which compensation shall be paid as follows: (a) 20% thereof upon completion of preliminary studies, which 20% shall be computed upon the reasonable estimated cost of such work or improvements; (b) 40% upon the completion of

specifications, and general working drawings, said 40% likewise to be computed upon the reasonable estimated cost of such work or improvements; (c) 40% from time to time as the work progresses, and as said City Engineer shall certify as to the progress of the work.

" 2. Should the City Engineer be employed on work as a consulting Engineer, but not to draw plans, specifications or supervise the work, then he shall be compensated as may be approved by the Council for each such particular service.

" 3. For such service as may be rendered in the matter of issuing permits or licenses, such compensation shall be paid to the City Engineer as may be provided for in the Resolution or Ordinance dealing with such permits or license fees.

" 4. Without cost or expense to him, and without any charge therefor against him, the City shall provide the City Engineer with a private office and drafting room, with the use of all necessary furniture and equipment, in the City Hall of the City of Long Beach."

He resigned as City Engineer after serving about twenty-two months. During that time he was paid by the city over $135,000. This action was brought to recover additional compensation to the amount of $50,577.46, and judgment has been awarded in his favor for $51,771.42, including interest and costs.

The fact that an officer of a small city should receive as compensation for twenty-two months' services such a large sum is remarkable. The question presented is whether it is legal. That depends upon whether the City Council had authority in law to fix his compensation in the manner in which it attempted to do by the resolution which it adopted. Article III, section 28, of the Constitution of the State provides: " The Legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor."

The Public Officers Law (Cons. Laws, ch. 47), section 67, subdivision 2, reads: "An officer or other person, to whom a fee or other compensation is allowed by law, for any service, shall not charge or receive a greater fee or reward, for that service, than is so allowed."

Section 13 of the city charter reads: " No officer or employee shall solicit or receive any pay, commission, money or thing of value, or derive any benefit, profit or advantage, directly or indirectly, from any contract with the city or supplies sold to the city or by reason of any improvements, alterations or repairs required by authority of the city, except his lawful compensation or salary as such officer or employee."

Section 100 of the city charter provides:

" § 100. Levy of taxes by council; tax rolls. The council must annually cause to be levied and raised by general tax upon all taxable property, real and personal, in the city according to the valuation upon the assessment roll for the current year corrected as herein provided:

\* \* \* \* \* \* \*

" 3. The amount necessary to defray the expenses for the next fiscal year as authorized and provided by this act."

Section 101, subdivision 2, reads:

" § 101. Maximum amount of annual city tax levy. The council may raise by tax upon the real and personal property assessable in the city in each year certain amounts which shall be estimated and designated for the following purposes:

\* \* \* \* \* \* \*

" 2. For paving, repairing and keeping in order the streets, crosswalks, gutters, lands, public places and grounds of said city, for the service of the city engineer."

The services performed by the respondent were those which the charter specified should be performed by the City Engineer, and in performing such services he acted as a city officer. It has long been settled that a public officer cannot receive additional compensation for services

rendered in his office even though such services are greatly in excess of those required when he received his appointment. The Constitution wisely so provides. (Art. III, § 28.)

A person who accepts a public office for which no salary or compensation is provided by law cannot recover for services as upon a *quantum meruit*. If a salary or compensation is fixed without any authority in law, a public officer cannot recover for services rendered as he cannot base his claim upon any valid provision of law awarding him a salary or compensation. The resolution which attempted to fix the compensation of the City Engineer is indefinite, uncertain and without any fixed basis upon which the compensation can be computed. In effect, it enables the incumbent of the office to fix the amount which he shall receive. The more he can induce the city to spend, the larger his compensation will be. In fact, under the findings in this case, he would be entitled to the same compensation for the study which he made and for plans which he drew which were never used by the city. If this case can be sustained and the resolution adopted by the City Council approved, the door is open by which a city may become legally obligated to pay an officer an indefinite, uncertain amount in the way of salary or compensation without any fixed estimate by which the amount can be determined in advance. In fact, the amount may be determined to a large extent by the mere whim of the official. Such was never the intention of the Legislature. It is contrary to the whole history of enactments affecting municipal goverment in this State. For many years the Legislature by various enactments affecting municipal governments has endeavored to provide checks upon the expenditure of the taxpayers' money. This is well illustrated by the provisions of the Second Class Cities Law (Cons. Laws, ch. 53), Laws of 1909, chapter 55.

It is provided in section 17: " Compensation of all the officers, clerks and subordinates in the several depart-

ments shall not exceed in the aggregate the appropriation made by the board of estimate and apportionment for that purpose."

Section 36: " No appropriation of money shall be made for any purpose except by ordinance specifying each item, the amount thereof, and the department or specific purpose for which the appropriation is made."

Section 75 requires that the Board of Estimate and Apportionment shall make an itemized statement of the expenditures of the city for the fiscal year which shall include an estimate of the amount of money deemed necessary to provide for the expenses of conducting the business of the city in each board, department and office thereof and it is provided that the common council shall not increase any item contained in the estimate for any purpose.

Section 77 requires the Common Council to levy and cause to be raised by tax the amount of the budget and section 79 requires that no officer, board or department shall expend or enter into any contract involving the expenditure of money for any of the purposes for which provision is made in the annual estimate in excess of the amounts appropriated in such estimate for such officer, board, etc., and any contract made in violation of the section shall be null and void.

It is thus seen that the Legislature has used extreme care to place a check upon city officials and to require information as nearly exact as possible as to the necessary expenses of the city for the year after the making up of the city budget.

In various forms, the same principle has been carried into the County Law (Cons. Laws, ch. 11) and many city charters. By such enactments the public policy of the State has been clearly expressed. (*Straus & Co.* v. *Canadian Pacific Ry. Co.*, 254 N. Y. 407.)

Under the resolution adopted by the City Council, it would be absolutely impossible to determine the amount

of compensation of the City Engineer in advance so that it could be included in the city budget. As stated by Chief Judge CRANE in the case of *Thompson* v. *Hofstatter* (*supra*, p. 64): " The salary of a public official cannot be left in this indefinite and uncertain way. * * *. The law does not permit any such evasion; the fixing of a salary would have no meaning."

While the language there used applied to a different state of facts, it is applicable to the situation disclosed by the record in this case.

The respondent, by accepting the appointment of City Engineer, became the trusted agent of the city, bound by an obligation of absolute loyalty to its interests and prohibited from becoming a party to any agreement or arrangement direct or indirect by which his personal interests could come into conflict with the interest of the city. Under the resolution of the council fixing his compensation, his personal interest and the interest of the city were in conflict. It was the interest of the city to have the work of the City Engineer done at as small a sum as possible or at least at a reasonable price. It was to the financial interest of the respondent to increase the work done for the city and its cost, thereby increasing his own compensation. He was placed in a position where his own financial interest and the interest of the city were necessarily in conflict. That the law will not permit. The dictates of sound public policy intervene to prevent municipal officers from creating such a condition. (*Smith* v. *City of Albany*, 61 N. Y. 444.)

The question here involved arose in the case of *Koons* v. *Richardson* (227 Ill. App. 477). In that case the statutes involved were substantially the same as in this case. There, as in this case, a City Engineer's compensation was fixed by ordinance at certain percentages upon the engineering work performed. The court held the ordinance absolutely void and decided that the engineer could not recover compensation thereunder. It said:

" It is very evident, from the provisions of the statute, that the city council is required to fix fees, salary or compensation of city officers at a definite sum. It will not do to fix it on a percentage basis or upon the basis of the usual and customary charges for such services. It must be fixed by ordinance and included in the annual appropriation ordinance. If not definitely fixed it could not be known how much should be raised by taxation for that purpose. Where the salary of a city attorney was fixed by ordinance at a certain sum with a proviso that for services in court he should be paid the usual and customary fees for such work in addition to his fixed salary, it was held that he was entitled to nothing more than his fixed salary. *McGovney* v. *Village of Melrose Park,* 145 Ill. App. 329.

" It necessarily follows that the contract cannot be sustained on the theory that it simply fixed the compensation of the city engineer. Neither can it be sustained on the theory that it was an allowance of extra compensation for additional services. *Gage* v. *Village of Wilmette,* 230 Ill. 428–435. No appropriation was made to pay appellant for services under the contract. It was impossible, therefore, for city officials to create a liability against the city for work done under the contract. *Gathemann* v. *City of Chicago,* 263 Ill. 292; *May* v. *City of Chicago,* 222 Ill. 595."

Respondent has attempted to justify the payment of the large amount which he has received and been awarded in this action on the ground that he personally paid his office force. If a city can enter into an arrangement by which a city officer can be paid a large sum for his services upon an understanding that he will hire and personally pay his office force, a new way has been found to defeat the Civil Service Law (Cons. Laws, ch. 7).

The question involved is not one of good faith and honest dealing or of business efficiency. It is simply a question whether, as a matter of law, a municipality may compensate a city officer in the manner attempted by the

resolution of the City Council. We have reached the conclusion that the resolution of the City Council is void and that respondent cannot receive compensation thereunder.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

LEHMAN, J. (concurring). Two questions are presented upon this appeal. *First*, whether the Council of the city of Long Beach had authority to fix the compensation to be paid to the City Engineer in the manner it attempted to do by its resolution and, *second*, whether the plaintiff has established that, under the terms of the resolution, he is entitled to further payments.

As Judge HUBBS has pointed out, the plaintiff is an officer not an employee of the city and can recover no compensation for services rendered other than the salary, or compensation, which is affixed by law to his office. There the public policy of the State is embodied in article III, section 28, of the Constitution of the State, which provides that " the Legislature shall not, nor shall the common council of any city, nor any board of supervisors, grant any extra compensation to any public officer, servant, agent or contractor." The resolution of the Council attempted to fix the compensation of the City Engineer and the compensation to which the plaintiff is entitled must be measured by that resolution. The Mayor, and even the members of the Council, had no authority to enter into a contract with the plaintiff to perform any services as City Engineer, for compensation, other than that attached to the office. The resignation of the plaintiff could not be accepted subject to a proviso that the plaintiff should continue to perform some of the duties of his office and receive for such services the compensation which he would have received if he had continued to hold the office of City Engineer. The resolution of the Common Council would, I agree, be invalid if, under a proper construction, it authorized the payment to the plaintiff

of the compensation which has been awarded to him. In my opinion the resolution is not, however, open to such construction and I disagree with the majority opinion only in so far as it challenges the authority of the Council to fix compensation of the City Engineer, " at the rate of 5% of the total cost of the various improvements or work supervised by him, which compensation shall be paid as follows: (a) 20% thereof upon completion of preliminary studies, which 20% shall be computed upon the reasonable estimated cost of such work or improvements; (b) 40% upon the completion of specifications, and general working drawings, said 40% likewise to be computed upon the reasonable estimated cost of such work or improvements; (c) 40% from time to time as the work progresses, and as said City Engineer shall certify as to the progress of the work."

It is to be noted that the compensation there is measured by a percentage of the " total cost of the various improvements or work supervised by him." A " public improvement " can be initiated only by the Council itself and the City Engineer can supervise no work which is not undertaken by the city in accordance with the provisions of the charter. Therefore, under no fair construction of the resolution can the City Engineer claim compensation for the preparation of plans or specifications where no public improvement or public work, supervised by him, has been undertaken by the city of Long Beach. The provision of the resolution that part of the compensation of the City Engineer shall be paid to him " upon completion of preliminary studies " and another part " upon the completion of specifications " merely fixes the time for payment of compensation earned. It does not enlarge the measure of the compensation and, for the preparation of plans or specifications, except in connection with a public improvement or work supervised by the City Engineer, he is entitled to no compensation. When the resolution is so construed, the plaintiff has failed to establish his cause of action, but under that construction — and no

other construction is permissible — I cannot see any valid ground for challenge of the power of the Common Council to adopt the resolution.

It is said that such a resolution would contravene the public policy of the State. Except in so far as the public policy of the State is embodied in constitutional provisions, limiting the legislative power, the Legislature is the supreme judge of the public policy of the State. No statute adopted by the Legislature which does not transcend the constitutional limitations upon the legislative power may be set aside because the court does not believe that the statute accords with public policy. The validity of the resolution of the Council depends solely upon the question of whether the Legislature has conferred upon the Council power to fix the compensation of a public officer in that manner.

The charter of the city of Long Beach provides for a salary fixed in advance at a specified sum in the case of all officers of the city except the Corporation Counsel and the City Engineer. There the charter allows scope to the discretion of the Council. It expressly provides that the City Engineer shall receive such compensation for services rendered as may be approved by the Council. There is no express limitation there upon the discretion of the Council to approve compensation measured by the work which may be required in any year of the City Engineer, and no such limitation can be read into the statute by implication, at least unless such a measure of compensation to be paid would be clearly unreasonable or a cloak for the violation of other provisions of law. The burden of service of a City Engineer of Long Beach, or, indeed, of any officer of a small city where the duties require professional skill, may vary greatly with the nature of the work required of such officer in any particular year. Ordinarily an engineer receives compensation for his professional services measured by the cost of the work which he supervises or for which he prepares plans. It

would be unreasonable, I think, to expect a small city to maintain a permanent department which would be able to perform the work ordinarily performed by an engineer and his staff and which would be adequate to take care of large projects or improvements. Variations in the amount of work to be done must reasonably require flexibility in provisions for compensation for such work, and also a practical solution of the problem of maintaining a staff adequate to perform such work expeditiously and efficiently. Then it would seem wise that a small city should have power to fix the compensation of its City Engineer at a sum which is measured in the same manner as such compensation of other engineers, performing similar work, would be measured, and out of such compensation to bear the expense of such assistants as may be necessary for the performance of the work.

It is said that such a provision would be an easy method of evading the provisions of the Constitution and the Civil Service Law in regard to the appointment of officers and employees in the civil service. When not used for a legitimate purpose, the courts will doubtless find no difficulty in curbing such practice. A decision that even when used for a legitimate purpose the practice is illegal will compel small cities either to maintain a permanent staff which will be idle at times and at other times compelled to work at inefficient speed, or to contract for the services which this plaintiff has performed instead of appointing a public officer to perform the work  There is nothing in the statute that indicates that the Legislature intended to impose these alternatives upon the city of Long Beach.

We are told that compensation so fixed in effect " enables the incumbent of the office to fix the amount which he shall receive. The more he can induce the city to spend, the larger his compensation will be." In truth, the statute gives the City Engineer no power to determine what work shall be undertaken. Discretion there rests

solely with the Council, and the influence of the City Engineer to induce the Council to spend more money than is wise is no greater than the influence which an engineer, retained by contract, would be able to exercise. In any event, such considerations concern only the wisdom of the Council, not its power.

CRANE, Ch. J., O'BRIEN and LOUGHRAN, JJ., concur with HUBBS, J.; LEHMAN, J., concurs in result in separate opinion in which CROUCH and FINCH, JJ., concur.

Judgments reversed, etc.