HERMAN C. EHLERS, a Taxpayer, etc., Plaintiff, *v.* GEORGE E. BLOOD, Defendant.

Supreme Court, Chautauqua County, October 9, 1940.

TAXPAYER'S ACTION to compel restitution of fees illegally collected.

*Robert M. Hitchcock*, for the plaintiff.

*Glenn W. Woodin* and *Thomas P. Heffernan*, for the defendant.

HARRY L. TAYLOR, Official Referee. This is a taxpayer's action to compel defendant to make restitution to the county of Chautauqua of moneys claimed to have been illegally collected from the county by defendant as coroner during about six years preceding the date of the commencement of the action. Fraud is not technically pleaded or specifically charged in this case. However, no proof of fraud is required to warrant a recovery in the action. (*Stetler* v. *McFarlane*, 230 N. Y. 400, 405.) Pursuant to an order ʳ based upon an opinion of Mr. Justice VAUGHAN, dated June 29, 1940, it seems to have been determined that "many of the fees collected by defendant are not justified by any provision of law" and that ascertainment of the amount which should be paid to the county by defendant as damages has been left to me as referee to hear and determine. This seems to require me to pass upon the merits of the several classes of claims made against defendant in order to arrive at the amount of damages.

Three classes of cases are involved: (1) "Natural death" cases; (2) cases of "investigation," and (3) cases of claimed overcharges for transportation of defendant in performing his work and in other respects. In addition to certain documents plaintiff has put in evidence testimony given by defendant in a libel suit heretofore brought and tried in which this defendant was plaintiff. I have permitted the defendant here to testify at length before me in his own behalf relative to details claimed to have been involved in the transactions covered by the testimony proffered by this plaintiff.

The statutes which are claimed to be operative in this case are section 378 of the Public Health Law, section 773 of the Code of

Criminal Procedure, section 192 of the County Law and section seventy-five of the Vehicle and Traffic Law. Section 378 of the Public Health Law bears upon death cases only. It provides for notification initially to local health officers in such cases and then obligates the health officer to refer the cases to a coroner if the health officer has reason to believe that the death was due to unlawful act or neglect. Section 773 of the Code of Criminal Procedure requires a coroner to go to a place where a killed or wounded person is and proceed to forthwith " inquire into " the cause of death or wounding unless the death or wounding occurs in a county in which is located a city of over 500,000 population, in which case a jury must be summoned. Under the section this obligation rests upon the coroner " whenever a coroner is informed that a person has been killed or dangerously wounded by another, or has suddenly died under such circumstances as to afford a reasonable ground to suspect that his death has been occasioned by the act of another by criminal means, or has committed suicide." Section 192 of the County Law provides for fees for coroners. In addition to authorizing the reimbursement of coroners for all moneys paid out actually and necessarily by them in the discharge of official duties as allowed by the board of supervisors the section specifies various fees. Among them is " mileage to the place of inquest and return ten cents per mile," " viewing bodies five dollars " and an allowance of three dollars per day for each and every day and fractional parts thereof spent in taking an " inquisition." Section 75 of the Vehicle and Traffic Law requires a coroner to make a report to the Commissioner of Motor Vehicles as to all deaths found to have been the result of motor vehicle or motorcycle accidents; but it contains nothing bearing upon reports or information to coroners nor upon the duties of coroners other than as above mentioned.

Controversies have heretofore arisen as to the scope and bearing of section 378 of the Public Health Law and section 773 of the Code of Criminal Procedure, upon the relative rights and obligations of coroners and public health officers. From my study of these sections — and in this I have been aided by reading several opinions of our Attorney-General handed down in and between 1914 and 1933 — I conclude that in cases of death or dangerous wounding under circumstances covered by section 773 of the Code of Criminal Procedure, or in cases covered by section 378 of the Public Health Law, the services of a coroner may be required. And if the facts and circumstances presented are such that a coroner acts upon reasonable information, his acting is within the contemplation of section 773 or section 378 above mentioned from whomsoever he receives his information and whatever may have been the co-ordinate duty devolving upon a " public health officer."

I will first consider the so-called " investigation " cases. In my endeavor to determine the legislative intent in using the words " inquest " and " inquisition " in section 192 of the County Law, I must assume that the two words are used with like intendment and that they refer technically to a coroner's inquest. I find ample authority in the books for stating that ordinarily a " coroner's inquest " is a formal proceeding — a " judicial investigation " (*People* v. *Coombs*, 158 N. Y. 532, 538) — held by a coroner with the aid of a jury in death cases. If an " inquiry " by a coroner without a jury under section 773 of the Code of Criminal Procedure is to be deemed an " inquest " under section 192 of the County Law, certainly it will have to be conducted with the same formalities as an " inquest " in the commonly accepted sense. Plaintiff, while conceding jurisdiction of the coroner in these investigation cases, claims that what defendant did in them was too informal to give defendant the right to receive any fees except for viewing bodies — under the claim that he had conducted an inquest or taken an inquisition. No written statements were taken, no witnesses were sworn, there were no arrests and no written reports were made and filed except annual reports to the supervisors of natural deaths. I find no statutory authority for the charges made in these " investigation " cases covered by Schedules 2, 8, 11, 13 and 16 attached to plaintiff's complaint.

Next I take up the " natural death " cases. As hereinbefore suggested, to warrant the charging of fees in these cases it must appear that defendant's trips and investigations were made under circumstances covered by the statutes. If, after notice under section 378 of the Public Health Law, the coroner gets to the scene and after investigating decides that a death occurred without medical attendance and perhaps was due to unlawful act or neglect, he may then have an " inquest " and " take an inquisition." If a coroner receives *information* as to a situation covered by the first sentence of section 773 of the Code of Criminal Procedure he should go to the place where the person is (dead or dangerously wounded) and " inquire into the cause of the death or wounding." It is to be noted that the statute authorizes an " inquiry " either by the coroner alone or with the aid of a jury in cases of wounding as well as death — while section 378 of the Public Health Law contemplates an ' inquest " in death cases only. I cannot construe section 192 of the County Law as authorizing the charges made by defendant in these natural death cases. The information received by defendant did not measure up to the requirements of section 773 of the Code of Criminal Procedure. The mileage allowance given by section 192 of the County Law and the three dollars per day for

" taking an inquisition " all seem to me to refer to " inquest " cases in the technical sense. This may appear to require a coroner to perform investigative work without pay. But payment must rest upon statutory authority and all doubts as to legality of payments to a public official from public funds must be resolved in favor of the public. (*Thompson* v. *Hofstatter*, 265 N. Y. 54, 63.)

In cases where charges made for one person were concededly proper, defendant has made the same charges as to other persons involved in the same transaction, that is, if defendant were called as coroner to hold an inquest over the dead body of A and the bodies of B and C and others were at the same place, all killed in one accident, defendant charged mileage and collected other amounts as to each dead person although he made but one trip. For " viewing " each separate body, I deem the charge reasonable and authorized and plaintiff concurs in this conclusion. But as to all the other demands I disagree with defendant. His theory presents possibilities which seem to me fantastic. If defendant could charge *e. g.* for one additional dead person where only one trip was required he could charge for one hundred. I cannot see that the statute was intended to have the meaning contended for by the defendant except as to viewing bodies. If the case of *Matter of Haley* v. *Supervisors* (12 Wend. 237) be in point for defendant as an authority, I decline to follow it.

Plaintiff should have judgment for the relief demanded in the complaint, with costs.