## Almedia v. Allegheny County

*Gilbert J. Helwig*, for plaintiffs.

*Maurice Louik*, for defendant.

VAN DER VOORT, J., November 22, 1967.—This matter is before us on plaintiff's motion for judgment on the pleadings and summary judgment.

Plaintiffs are physicians who, at the behest of the Coroner of Allegheny County, performed a total of 200 autopsies and 249 external examinations of bodies during the period January 3, 1966, through May 31, 1966. Plaintiffs' claims were presented to the County Commissioners of Allegheny County by the coroner, and the commissioners, on advice of the county solicitor, refused payment contending that the work was not performed in accordance with law. There is no dispute as to good faith on the part of plaintiffs, the quality of their work, or the reasonableness of the fees.

Recent history of the authority of the coroner to require an autopsy is covered by three acts of the legislature and the relevant parts of each are set forth below.

Act of April 16, 1907, P. L. 92:

"Section 1. Be it enacted, &c., That it shall be the duty of the coroner and the deputy coroner of any county in this Commonwealth, in all cases where the cause of death is of a suspicious nature and character, to cause an investigation of the facts concerning said death, and to make or cause to be made such an autopsy as the facts of the case may demand, by such official".

Act of July 12, 1935, P. L. 710:

"Section 2. That sections one and two of said act are hereby reenacted and amended to read as follows:

"Section 1. Be it enacted, &c., That it shall be the duty of the coroner (and) or the deputy coroner of any county in this Commonwealth, in all cases where (the cause of) death is sudden or violent or is of a suspicious nature and character, to cause (an) a careful investigation of the facts concerning said death to be made, to ascertain whether the death was due to other than natural causes, and to make or cause to be made such an autopsy as the facts of the case may demand (by such official)".

Act of July 28, 1953, P. L. 723:

"Section 1236. Coroner's Investigations. — The coroner having a view of the body shall investigate the facts and circumstances concerning deaths which appear to have happened within the county, regardless where the cause thereof may have occurred, for the purpose of determining whether or not an inquest thereof should be had, in the following cases: (1) Any sudden, as hereafter defined, violent or suspicious death, (2) any death wherein no cause of death is properly certified by a person duly authorized thereof, (3) any death resulting from a mine accident, as directed by law, (4) deaths resulting from drownings, cave-ins and subsidences, (5) any stillbirth, or the death of any baby dying within twenty-four hours after its birth, and, in addition thereto, (6) the death of any prematurely born infant, wherein the cause of death is not properly certified by a person duly authorized thereto.

"The purpose of the investigation shall be to determine whether or not there is any reason sufficient to the coroner to believe that any such death may have resulted from the criminal acts or criminal neglect of persons other than the deceased, rather than from natural causes or by suicide.

"Section 1237. Inquest; Autopsy; Coroner's Duties; Records.—If, upon the investigation by the coroner, he shall not be satisfied thereby that the death resulted from natural causes or by suicide, he shall proceed to conduct an inquest upon a view of the body, as provided by law. *In the conduct of the inquest, the coroner may require such an autopsy as may be necessary, in accordance with law.* At the inquest, the coroner's duty shall be to ascertain the cause of death and whether any person other than the deceased was criminally responsible therefor by act or neglect, and if so, the identity of the person, and any further evi-

dence and witnesses regarding the crime. The proceedings at the inquest shall be recorded, at the expense of the county, in a manner to be provided by the county commissioners, and any salary that may be required for this purpose shall be fixed by the salary board". (Italics supplied.)

It is clear that, after the Act of April 16, 1907, P. L. 92, and prior to the Act of July 28, 1953, P. L. 723, the coroner was authorized to perform autopsies as part of his investigation. It is equally clear that this procedure was changed by the 1953 legislation. There are no committee reports available so we cannot state with authority *why* the change was made. We are compelled, therefore, to interpret the new legislation on the basis of what it says and the fact of its substantial difference from the prior law.

Stated in the most fundamental terms the Act of 1953 authorizes an autopsy as an integral part of an inquest and not otherwise. Analysis of this position indicates that it is a reasonable one.

An autopsy, considered academically, is merely a routine post-mortem procedure. However, when it affects an individual citizen, i.e., when a member of his family or someone close to him is the subject of the autopsy, it assumes subjective characteristics and is a matter which, we expect, most people would consider abhorrent. This compels the conclusion that the procedure should be done only when there is a serious reason therefor.

One can go on logically to infer that, in cases so serious as to warrant an autopsy, it was the intention of the legislature to fix the responsibility for determining the cause of death on a coroner's jury rather than on the coroner alone. It must be taken into consideration that nonmedical facts and circumstances bear on the decision to be made in these cases and the coroner's jury, as any other jury, is competent to weigh and

consider both the medical and nonmedical evidence. A parallel to this is found in our trial courts, where juries hear all evidence, medical and otherwise, and then make findings of fact and award damages.

We recognize that the autopsy must be performed before the coroner's jury meets to decide the issue, but we also recognize that after the autopsy has been done, the evidence gleaned therefrom must be presented to the coroner's jury for evaluation. To allow anything less would be to permit a coroner to perform as many autopsies as he wished with the assurance that no further testimony would be taken and no record made except at his pleasure. Consistent with what has been said above, where a case has been deemed sufficiently serious to justify an autopsy, under current legislation, an inquest must be held and a record thereof made.

The inquest is of ancient origin and has certain necessary components. It was defined by one court as follows:

"There was some controversy at the trial with respect to the true meaning and character of an inquest by a coroner in cases of death. It was contended by the learned counsel for the defendant that it is not necessary, in order to constitute an inquest, within the meaning of the law, that a jury should be impaneled; that a mere inquiry by the coroner himself, or any one acting under his authority, with reference to the cause of death, constitutes an inquest within the scope and meaning of the statute and the resolution of the board of supervisors prescribing the fees or compensation of coroners. We think the learned trial judge disposed of that question correctly. A coroner's inquest has always meant and still means a judicial investigation into the cause of death by a coroner, with the aid of a jury, and hence the fee for an inquest could not properly be charged unless a jury had been impanelled to determine the cause of death. . . .":

People v. Coombs, 158 N. Y. 532, 53 N. E. 527, (1899).

We find that the autopsies in question were not conducted according to law in that the fact-finding processes mandated by the legislature were not allowed to operate.

The claims for which this suit is brought are not those of the coroner, however, but are of the physicians who have actually performed the work for which they were engaged. Plaintiffs are professional men called upon by an elected official and constitutional officer of the County of Allegheny to perform a service requiring medical technology and the mere fact that the coroner has overstepped the limitations of his office does not necessarily prevent plaintiffs' recovering for their professional services. There is no claim in the pleadings that plaintiffs knew that the autopsies requested were extra legal. The sole issue raised by the pleadings is whether or not under the circumstances set forth in the complaint and the answer and new matter, the County of Allegheny is obligated to compensate plaintiff physicians for their services. We find that the County of Allegheny is obligated to make payment for these services under the circumstances as pleaded here. See The County of Northampton v. Innes, 26 Pa. 156. We therefore will grant plaintiffs' motion for judgment on the pleadings and summary judgment. Appropriate order will be entered in accordance with this opinion.

## ORDER

And now, November 22, 1967, after hearing and consideration of briefs filed, it is ordered that plaintiffs' motion for judgment on the pleadings and for summary judgment be and the same is hereby granted. The amounts of the judgment will be supplied by the supplemental order of this court to follow.